# STATE OF MICHIGAN

# COURT OF APPEALS

NATHANIEL E. CHAPMAN,

        Plaintiff-Appellant,

v

ZAKI JAMIL ALAWI, MICHIGAN RENTAL, and 1129 S. STATE, LLC,

        Defendants-Appellees.

UNPUBLISHED
January 18, 2018

Nos. 331750, 334164, 334948
Washenaw Circuit Court
LC No. 14-000068-CZ

MICHIGAN RENTAL, ZAKI JAMIL ALAWI, and 1129 S. STATE, LLC,

        Plaintiffs/Counter-Defendants-
        Appellees/Cross-Appellants,

v

NATHANIEL E. CHAPMAN,

        Defendant/Counter-Plaintiff-
        Appellant/Cross-Appellee,

and

GEORGE KELLY, CATHERINE RADOVICH, and STEPHEN SYKES,

        Defendants,

and

N. KULA RACKIC, GARRICK ROEMER, and TOM SULLIVAN,

        Defendants/Counter-Plaintiffs.

No. 332711
Washenaw Circuit Court
LC No. 14-000729-CZ

-1-

NATHANIEL E. CHAPMAN,

       Plaintiff-Appellee,

v

ZAKI JAMIL ALAWI and 1129 S. STATE, LLC,

       Defendants-Appellants,

and

MICHIGAN RENTAL,

       Defendant.

No.  333259
Washtenaw Circuit Court
LC No.  14-000068-CZ

---

MICHIGAN RENTAL, ZAKI JAMIL ALAWI,
and 1129 S. STATE, LLC,

       Plaintiffs/Counter-Defendants-
       Appellees,

v

NATHANIEL E. CHAPMAN,

       Defendant/Counter-Plaintiff-
       Appellant,

and

GEORGE KELLY, CATHERINE RADOVICH,
and STEPHEN SYKES,

       Defendants,

and

N. KULA RACKIC, GARRICK ROEMER, and
TOM SULLIVAN,

       Defendants/Counter-Plaintiffs.

No.  334165
Washtenaw Circuit Court
LC No.  14-000729-CZ

---

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

-2-

PER CURIAM.

These six consolidated appeals arose from a highly contentious landlord-tenant dispute that encompasses two lower-court actions. In one of the underlying cases, the tenant sued the landlords, and in the other, the landlords sued the tenant.

In Docket No. 331750, plaintiff, Nathaniel E. Chapman (Chapman), who was the tenant, appeals as of right a final order dismissing his fourth amended complaint against defendants, Zaki Jamil Alawi (Alawi), Michigan Rental, and 1129 S. State, LLC (referred to collectively as the Alawi parties because Alawi is the principal of the two business entities), who were the landlords.

In Docket No. 332711, defendant/counterplaintiff Chapman appeals as of right an order denying Chapman's motion for entry of a default judgment, granting Chapman's motion for leave to amend his affirmative defenses to allow a defense based on a release, granting Chapman's motion for summary disposition based on the release with respect to claims asserted by the Alawi parties, granting the Alawi parties' motion to dismiss Chapman's counterclaims and to dismiss Chapman's affirmative defenses except for the affirmative defense based on the release, and dismissing Chapman's counterclaims (subject to the disposition of the security deposit held by the Alawi parties). Plaintiffs/counterdefendants the Alawi parties cross-appeal the same order.

In Docket No. 333259, Alawi and 1129 S. State, LLC, appeal as of right an order denying their motion for sanctions against Chapman and his counsel.

In Docket Nos. 334164 and 334165, Chapman appeals as of right an order denying his motion for case-evaluation sanctions against the Alawi parties and an order granting in part and denying in part Chapman's motion for costs.

In Docket No. 334948, Chapman appeals as of right a judgment in favor of the Alawi parties and against Chapman in the amount of $54,378.56.

All six appeals were consolidated to advance the efficient administration of the appellate process. See *Chapman v Alawi*, unpublished order of the Court of Appeals, entered October 5, 2016 (Docket No. 334948).

We affirm in Docket Nos. 331750, 332711, 333259, 334164 and 334165. In Docket No. 334948, we reverse and remand for entry of an order denying the Alawi parties' request for taxable costs and expert-witness fees.

## I. DOCKET NO. 331750

Chapman argues that the trial court erred in granting summary disposition to the Alawi parties on Chapman's claims under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, regarding the Alawi parties' failure to comply with certain provisions of the landlord and tenant relationships act (LTRA), MCL 554.601 *et seq.* We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition," including in an action for a declaratory judgment. *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012); *Farm Bureau Ins Co v Abalos*, 277 Mich App 41, 43; 742 NW2d 624 (2007). This issue concerns the Alawi parties' first motion for summary disposition, which was brought under MCR 2.116(C)(8) and (C)(10). Although the trial court did not articulate under which subrule it was granting summary disposition, it appears that each subrule could be applicable to some aspects of the trial court's decision on this issue, and we will thus articulate the standard under each subrule.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted. A reviewing court must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. The motion should be granted only if no factual development could possibly justify a recovery.

\* \* \*

In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 487-488; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

Questions of statutory interpretation are reviewed de novo. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 98; 693 NW2d 170 (2005). Unambiguous statutory language must be applied as written. *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008). This Court also reviews de novo the application of a court rule to the facts. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015).

MCL 445.903(1), a provision of the MCPA, provides, in relevant part:

Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

\* \* \*

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

-4-

(t) Entering into a customer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u) Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

The MCPA defines "trade or commerce," in relevant part, as

the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. [MCL 445.902(1)(g).]

Another provision of the MCPA, MCL 445.911, provides, in relevant part:

(1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under [MCL 445.903].

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under [MCL 445.903].

(2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

As a remedial statute meant to prohibit unfair practices in trade or commerce, the MCPA is to be liberally construed to advance its intended goals. *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 125; 888 NW2d 295 (2016). Also, a violation of the LTRA may constitute a violation of the MCPA in certain circumstances. *Hovanesian v Nam*, 213 Mich App 231, 237; 539 NW2d 557 (1995); *Lesatz v Standard Green Meadows*, 164 Mich App 122, 129; 416 NW2d 334 (1987). MCL 554.603, a provision of the LTRA, provides, in relevant part:

A landlord shall not require a security deposit unless he notifies the tenant no later than 14 days from the date a tenant assumes possession in a written instrument of the landlord's name and address for receipt of communications under this act, the name and address of the financial institution or surety required

by section 41 and the tenant's obligation to provide in writing a forwarding mailing address to the landlord within 4 days after termination of occupancy.

MCL 554.608, another provision of the LTRA, provides, in relevant part:

> (1) The landlord shall make use of inventory checklists both at the commencement and termination of occupancy for each rental unit which detail the condition of the rental unit for which a security deposit is required.
>
> * * *
>
> (4) The checklist shall contain the following notice in 12 point boldface type at the top of the first page: "You should complete this checklist, noting the condition of the rental property, and return it to the landlord within 7 days after obtaining possession of the rental unit. You are also entitled to request and receive a copy of the last termination inventory checklist which shows what claims were chargeable to the last prior tenants.".

As the above-quoted language of MCL 445.911(2) makes clear, a person who suffers "loss" as a result of a violation of the MCPA may sue to recover actual damages or $250, whichever is greater, along with attorney fees. By requiring proof of a loss in order to recover damages, the Legislature incorporated into the MCPA damages remedy the common-law requirement of demonstrating an injury. *Mayhall v A H Pond Co, Inc*, 129 Mich App 178, 183; 341 NW2d 268 (1983). Proof of such an injury may consist of actual economic damages or the frustration of the plaintiff's reasonable expectations. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 130; 839 NW2d 223 (2013); *Mayhall*, 129 Mich App at 183-186. If the damages consist of the frustration of the plaintiff's reasonable expectations, "the plaintiff may recover the difference between the actual value of the property when the contract was made and the value that it would have possessed if the representations had been true." *Id*. at 185. In contrast to the MCPA damages remedy set forth in MCL 445.911(2), the MCPA provision concerning an action for declaratory or injunctive relief, MCL 445.911(1), does not require that a plaintiff have suffered a loss caused by a violation of the MCPA. Therefore, under the plain statutory language, a plaintiff may obtain a declaratory judgment or enjoin an unlawful practice without having suffered a loss.

In this case, Chapman asserted violations of the MCPA premised on the Alawi parties' failure to comply with the above-quoted provisions of the LTRA. Chapman asserted that the lease failed to include the address of the financial institution that held Chapman's security deposit. Chapman also claimed that the Alawi parties failed to provide a move-in condition checklist in a timely fashion and that the move-in condition checklist that was eventually provided did not contain the notice language required by MCL 554.608(4). In their first motion for partial summary disposition, the Alawi parties acknowledged that the lease did not contain the street address for the bank at which the security deposit was held; the lease identified the bank as "Michigan Commerce Bank, Ann Arbor, MI 48104." The Alawi parties asserted substantial compliance with the statutory requirement because there was only one office of this bank in Ann Arbor at all relevant times. The Alawi parties argued that the delay in providing the move-in condition checklist was attributable to the tenants, who delayed in permitting a walk-

through and inspection of the property. The Alawi parties admitted that the move-in condition checklist did not contain the statutorily-required notice language. The Alawi parties nonetheless claimed substantial compliance with the statutory requirement because the checklist was filled out, signed, and delivered to the tenants on the date of the inspection, thereby obviating the effects of any omission. The trial court granted summary disposition to the Alawi parties on these claims because Chapman had failed to identify any harm arising from the purported violations. The court noted that there was only one Michigan Commerce Bank in Ann Arbor such that Chapman would have had no difficulty locating the bank if necessary. Chapman had also failed to articulate how he was harmed by the failure to provide the move-in condition checklist in a timely fashion or by the failure to include the statutorily-required notice language in the checklist.

On appeal, Chapman challenges the trial court's determination that Chapman suffered no damages arising from the purported violations of the MCPA. Chapman contends that he suffered damages in the form of lost use of the security deposit funds and that his reasonable expectations were frustrated. Chapman further contends that he was entitled to declaratory relief with respect to these claimed violations. We disagree with Chapman's arguments.

Chapman's contention that he suffered a loss in the use of the security deposit funds due to the MCPA violations lacks merit. MCL 445.911(2) requires the plaintiff to establish that he suffered loss "as a result of" the MCPA violation. See *Mayhall*, 129 Mich App at 181 ("The core of the controversy is whether the complaint sufficiently states that *as a result of* the alleged statutory violations the plaintiff suffered a loss."). Chapman did not lose the use of the security deposit funds as a result of the Alawi parties' purported failure to identify in the lease the street address of the bank holding the security deposit funds, the alleged failure to provide the move-in condition checklist in a timely fashion, or the failure to include the statutorily-required notice language in the lease. Rather, Chapman temporarily lost the use of the funds because he paid those funds as a security deposit to obtain a lease on the property. Further, Chapman has not presented any factual allegations or evidence that he held a reasonable expectation that was frustrated by the Alawi parties' purported violations of the LTRA. Chapman has not established any difference between the actual value of the property when the lease agreement was entered into and the value that it would have possessed if the alleged statutory violations had not occurred. *Mayhall*, 129 Mich App at 185. Because Chapman has not established that he suffered a loss as a result of the purported statutory violations, the trial court properly granted summary disposition to the Alawi parties with respect to Chapman's request for damages under the MCPA.

Nor did the trial court err in dismissing the requests for declaratory relief with respect to these claims. It is true that the plain language of MCL 445.911(1) does not require a plaintiff to establish a loss in order to obtain a declaratory judgment under the MCPA. Also, MCR 2.605(A)(1) provides: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." "The existence of an 'actual controversy' is a condition precedent to the invocation of declaratory relief. As such, a court may not decide moot questions in the guise of giving declaratory relief, because moot cases present only abstract questions of law that do not rest upon existing facts or rights." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 127; 715

NW2d 398 (2006) (quotation marks, citations, and brackets omitted). An actual controversy exists when a declaratory judgment is needed to guide a plaintiff's future conduct in order to preserve his legal rights. *Shavers v Kelley*, 402 Mich 554, 588; 267 NW2d 72 (1978). "[B]y granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012).

Chapman has failed to articulate any facts establishing that a declaratory judgment regarding the Alawi parties' obligations to provide the street address of the bank where the security deposit was held or to provide a timely move-in condition checklist with the prescribed notice language is necessary to guide Chapman's future conduct in order to preserve his legal rights. Setting aside the fact that Chapman no longer resides at the rental property, there is no dispute that both Chapman and the Alawi parties are now aware of their pertinent legal rights and duties, with the Alawi parties having acknowledged their failure to comply with many of these duties and Alawi having represented in an uncontested affidavit that he has now taken steps to address the deficiencies with respect to the lease and move-in condition checklist.[1] Given these facts, Chapman does not require guidance regarding his future conduct in order to preserve his legal rights. Summary disposition concerning the requests for declaratory relief in the MCPA claims at issue was thus appropriate.[2]

---

[1] In particular, Alawi's affidavit states, in relevant part:

40. The following items have been permanently changed in my residential leases, which leases have been used in all new tenancies and distributed to all affected tenants;

- All reflect street address information regarding the bank in which that tenants' security deposit is located;

- The language required by the Ann Arbor City Charter is in the correct font, type and contains a black border;

- All leases contain the notice required by MCL 554.601b;

- I have made appropriate changes to the language in the move-in checklist and have taken steps to correct the timing of the acquisition of that checklist; and

- I have changed procedure with regard to delivering written heating budget plan information to all residential tenants.

[2] To the extent that the trial court's reasoning differed in that the trial court referred only to the absence of harm to Chapman, affirmance is appropriate because the trial court reached the correct result. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998) ("When this Court concludes that a trial court has reached the correct result, this Court

Chapman next makes a related argument that the trial court erred in dismissing Chapman's various requests for declaratory relief. Chapman challenges the trial court's dismissal of several counts requesting declaratory relief in addition to those discussed above. In particular, Chapman contests the dismissal of the declaratory-relief requests in the MCPA counts that are premised on alleged violations of the Ann Arbor Housing Code, the Ann Arbor Charter, and another provision of the LTRA. In Count 1 of his fourth amended complaint, Chapman alleged a violation of the MCPA arising from the Alawi parties' failure to provide a written notice regarding utility charges, in violation of Ann Arbor Ordinances, § 8:524.[3] In Count 2, Chapman asserted a violation of the MCPA premised on an alleged violation of Ann Arbor Charter, § 19.4, which requires, among other things, certain notice language in leases to be surrounded by a black border. In Count 3, Chapman alleged a violation of the MCPA premised on the failure to provide written notice required by a provision of the LTRA, MCL 554.601b(1), concerning relief from rental-payment obligations of a tenant who reasonably apprehends a present danger from domestic violence, sexual assault, or stalking.[4] Chapman also discusses

---

will affirm even if it does so under alternative reasoning."). We also note that the Alawi parties' first motion for partial summary disposition argued in favor of summary disposition on the same ground that we have used in affirming the result reached by the trial court.

[3] Ann Arbor Ordinances, § 8:524, provides:

> No owner of rental property shall lease the property without furnishing to the tenant, before the time of entering into the lease, a budget plan. As used in this section, "budget plan" means a projection of monthly utility costs for primary heating fuel prepared by the public utility company. This section shall apply to the rental of all dwelling units for which budget plan information is available from the utility company without charge and in which the tenant is required to pay the owner or the utility company a utility charge for heating fuel in addition to rent. The budget plan statement shall be in writing, included as part of the leasing agreement, but may be prepared by the owner based on information verbally supplied by the utility company.

[4] MCL 554.601b(1) states:

> A tenant who has a reasonable apprehension of present danger to the tenant or his or her child from domestic violence, sexual assault, or stalking while that person is a tenant shall be released from his or her rental payment obligation in accordance with the requirements of this section after submittal of written notice of his or her intent to seek a release and written documentation that the tenant has a reasonable apprehension of present danger to the tenant or his or her child from domestic violence, sexual assault, or stalking. Submittal of written notice shall be made by certified mail. A rental agreement may contain a provision stating "A tenant who has a reasonable apprehension of present danger to him or her or his or her child from domestic violence, sexual assault, or stalking may have special statutory rights to seek a release of rental obligation under MCL 554.601b.". If the rental agreement does not contain such a provision, the landlord shall post written notice visible to a reasonable person in the landlord's property management office or deliver written notice to the tenant

-9-

again Counts 4 through 6, which assert MCPA violations premised on the purported LTRA violations already discussed above; we will not further discuss those counts.

In dismissing Counts 2 and 3 of Chapman's complaint, the trial court emphasized the absence of any harm to Chapman arising from the alleged violations. In particular, the trial court stated that Chapman had failed to articulate any way in which he was harmed by the absence of a black border surrounding the notice language required by Ann Arbor Charter, § 19.4, and that Chapman had failed to articulate any way in which he was harmed by the failure to provide the domestic violence, sexual assault, and stalking notice required by MCL 554.601(b)(1). As discussed earlier, the plain language of MCL 445.911(1) does not require a plaintiff to establish a loss in order to obtain a declaratory judgment under the MCPA. Nonetheless, dismissal of the requests for declaratory relief in Counts 2 and 3 was appropriate because Chapman failed to articulate facts establishing that a declaratory judgment was needed to guide his future conduct in order to preserve his legal rights with respect to the requirement of a black border around certain language in the lease and the required notice regarding domestic violence, sexual assault, and stalking. See *Shavers*, 402 Mich at 588; *UAW*, 295 Mich App at 495; *PT Today, Inc*, 270 Mich App at 127. The parties are now aware of their legal rights and duties, with Alawi's uncontested affidavit reflecting that he has corrected the deficiencies at issue in these counts. The trial court properly granted summary disposition to the Alawi parties with respect to Counts 2 and 3.[5]

In granting summary disposition to the Alawi parties on Count 1 of Chapman's fourth amended complaint, the trial court provided the following rationale:

> [Alawi] had given as much information as he had regarding the monthly costs for all the utilities and [Chapman] has not established that the budget plan information is available from the utility company without charge which is what triggers the requirement of [a landlord] to include it in the lease.

On appeal, Chapman does not address this basis identified by the trial court for granting summary disposition to the Alawi parties on Count 1. Because Chapman fails to address or dispute the basis of the trial court's ruling regarding Count 1, this Court will not even consider granting Chapman any relief regarding this count. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

Chapman also notes the trial court's dismissal of Count 18, which was a separate count asserting a general request for a declaratory judgment. This count did not allege any additional substantive claims but merely requested declaratory relief in reference to the purported MCPA violations and underlying statutory, charter, or ordinance violations asserted in Counts 1 through 6. In granting summary disposition to the Alawi parties on this count, the trial court stated:

> when the lease agreement is signed. The content of the written notice shall be identical to the provision in this section.

[5] Again, to the extent that the trial court's reasoning differed in that the trial court referred only to the absence of harm to Chapman, affirmance is appropriate because the trial court reached the correct result. See *Messenger*, 232 Mich App at 643.

On the declaratory judgments requested by [Chapman], it appears that what the – I guess I should say that I'm unclear as, are the [Alawi parties], as to what the declaratory judgments are that are requested by [Chapman]. This is count 18, I don't believe that [Chapman] has articulated a cause of action for declaratory judgment in . . . count 18. So I'll grant summary disposition as to that one.

On appeal, Chapman asserts without elaboration that he believes the trial court misinterpreted the law and dismissed Count 18 without being fully informed. Chapman does not explain how he reaches this conclusion. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted). Failure to adequately brief an issue constitutes abandonment. *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009). In any event, as discussed, the trial court was correct in observing that Count 18 of Chapman's fourth amended complaint failed to articulate any cause of action, beyond the claims that Chapman had attempted to assert elsewhere in the complaint, and we can discern no basis to conclude that the trial court erred in granting summary disposition to the Alawi parties on Count 18.

Chapman briefly mentions that he requested declaratory relief in Count 25, which concerns alleged statutory violations related to lead-based paint hazards, but he fails to present any substantive argument regarding Count 25 in this issue. He has thus abandoned any argument concerning Count 25 in this issue by failing to adequately brief it. *Wilson*, 457 Mich at 243; *McIntosh*, 282 Mich App at 484. Moreover, Chapman has articulated no basis to conclude with respect to Count 25 that a declaratory judgment is needed to guide his future conduct in order to preserve his legal rights.

Chapman next argues that the trial court abused its discretion in awarding costs to the Alawi parties' counsel due to the failure of Chapman's counsel to appear for a motion hearing. We disagree. A trial court's award of attorney fees and costs is reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. Also, this Court reviews de novo the proper interpretation and application of a court rule. *Kaeb*, 309 Mich App at 564.

MCR 2.119(E)(4)(b) & (c) provide:

(b) Unless excused by the court, the moving party must appear at a hearing on the motion. A moving party who fails to appear is subject to assessment of costs under subrule (E)(4)(c); in addition, the court may assess a penalty not to exceed $100, payable to the clerk of the court.

(c) If a party violates the provisions of subrule (E)(4)(a) or (b), the court shall assess costs against the offending party, that party's attorney, or both, equal to the expenses reasonably incurred by the opposing party in appearing at the

hearing, including reasonable attorney fees, unless the circumstances make an award of expenses unjust.

On July 23, 2014, the Alawi parties' counsel filed a notice of hearing setting Chapman's motion for class certification, which had been adjourned previously, for a hearing on July 30, 2014. On July 25, 2014, Chapman's counsel filed a notice of objection to this notice of hearing and filed a re-notice of hearing, scheduling the hearing for August 13, 2014. On July 28, 2014, the Alawi parties' counsel wrote the following email to Chapman's counsel:

Hello Kim. I am in receipt of your objections to my Notice (for July 30) on your Motion for Certification, and your Re-Notice for August 13. I try to be sympathetic and cooperative in moving docket items, but I feel my client has been prejudiced already by the delay in getting this heard.

Why shouldn't this hearing proceed this week?

Neither Chapman nor his counsel appeared for the July 30, 2014, hearing, and they did not ask the court to be excused from attending the hearing. The Alawi parties' counsel appeared for the July 30, 2014, hearing. The Alawi parties' counsel claimed that he devoted 3.6 hours to preparing for and appearing in court for the July 30, 2014, hearing. The Alawi parties' counsel averred that his hourly rate was $300 an hour. The trial court awarded to the Alawi parties' counsel $300 for one hour of costs for the failure of Chapman's counsel to appear for the July 30, 2014, hearing.

On appeal, Chapman does not contest that his counsel failed to appear for the July 30, 2014, hearing. Chapman contends that the trial court inaccurately characterized the July 28, 2014, email from the Alawi parties' counsel to Chapman's counsel. At the August 27, 2014, hearing, the trial court made the following comments when deciding to award costs:

Okay. I'll award one hour of costs to Mr. Hopper and his client for the failure to appear. And I won't – I won't take an action that endorses failure to answer an email saying can I help you, let me know if there's a problem why shouldn't this proceed.

Contesting the trial court's characterization of the email, Chapman states, "Attorney Hopper's email, however, did not say 'can I help you' or 'let me know if there's a problem.' " But the trial court did not claim to be quoting directly from the email. The trial court accurately described the gist of the email, in that the Alawi parties' counsel indicated that, although he tried to be cooperative in moving docket items, he felt his clients had already been prejudiced by the delay in hearing the class-certification motion, and he asked why the matter should not proceed that week. The trial court's point seems to have been that the Alawi parties' counsel had essentially indicated that he wished to proceed with the July 30, 2014, hearing unless Chapman's counsel could explain why the hearing should not proceed that week, and that Chapman's counsel failed to respond to this inquiry. Chapman does not contest that his counsel failed to respond to the email. Overall, the trial court's summary of the email was accurate and is not a ground for upsetting the costs award.

Chapman also notes that MCR 2.119(E)(4)(b) requires *the moving party* to appear at a motion hearing, and Chapman asserts that he was *not* the moving party. Chapman contends that the Alawi parties' counsel held himself out as the moving party by indicating on the motion praecipe that he represented Chapman. This argument is devoid of merit. Chapman was the moving party because he filed the motion for class certification that was scheduled for a hearing on July 30, 2014, pursuant to the notice of hearing filed by the Alawi parties after the matter had been previously adjourned. The fact that the Alawi parties filed the notice of hearing for July 30, 2014, does not alter the fact that Chapman was the moving party on the class-certification motion. Chapman does not present an argument or cite authority to contest the proposition that a party other than the moving party may file a notice of hearing on a previously-filed motion. Any such claim has thus been abandoned. *Wilson*, 457 Mich at 243; *McIntosh*, 282 Mich App at 484. The notice of hearing filed by the Alawi parties correctly identified the attorneys for all of the parties and properly noted that it was Chapman's motion for class certification that was being noticed for hearing. Although the praecipe filed by the Alawi parties had their attorney's signature in a location designated for the signature of the moving party, this appears to be due to the limitations of the court form; in any event, the praecipe correctly identified the Alawi parties' attorney as the attorney for "[d]efendants" and indicated that it was "plaintiff's motion" that was being heard. Overall, the language of the notice of hearing and praecipe correctly reflected the procedural posture of the case and did not alter the fact that Chapman was the moving party.

Chapman further asserts that the failure of the Alawi parties' counsel to timely serve the notice of hearing on the attorney for intervening plaintiff Stephen Sykes,[6] as well as Chapman's re-noticing of the hearing for August 13, 2014, rendered the award of costs to the Alawi parties' counsel improper. But Chapman does not dispute that his own counsel was properly served with the notice of hearing. The purported failure of the Alawi parties' counsel to properly serve Sykes's counsel did not alter the obligation of Chapman's counsel under MCR 2.119(E)(4)(b) to appear at the hearing on Chapman's motion. Chapman fails to elaborate an argument on this point or to cite authority in support of his attempt to avoid the plain language of the rule. Nor did Chapman's attempt to re-notice the hearing for August 13, 2014, alter his counsel's obligation to attend the July 30, 2014, hearing, given that Chapman's counsel did not seek to be excused by the court from attending the hearing and did not respond to the email inquiry from the Alawi parties' counsel regarding why the hearing should be adjourned. See MCR 2.119(E)(4)(b) ("Unless excused by the court, the moving party must appear at a hearing on the motion."). Overall, then, the trial court did not abuse its discretion in awarding costs.

Chapman next argues that the trial court abused its discretion in denying Chapman's motion to compel discovery regarding the Alawi parties' bank records and in ordering the return

---

[6] Sykes's attorney signed an affidavit indicating that he was not timely served with the Alawi parties' notice of hearing for July 30, 2014. An amended proof of service filed by the Alawi parties' attorney indicates that on July 23, 2014, the notice of hearing for July 30, 2014, was personally served on Chapman's counsel and served by first-class mail on Sykes's counsel. In general, a notice of hearing on a motion must be served by mail at least nine days before the hearing or by delivery at least seven days before the hearing. MCR 2.119(C)(1).

or destruction of bank records that had been improperly released and disseminated. We disagree. A trial court's decision whether to grant a discovery motion is reviewed for an abuse of discretion. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. This Court reviews de novo the proper interpretation and application of a court rule. *Kaeb*, 309 Mich App at 564.

MCR 2.302(B)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, or other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This Court has explained:

> It is well settled that Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case. This is true whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party. However, Michigan's commitment to open and far-reaching discovery does not encompass fishing expeditions. Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition. [*Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011) (quotation marks, citations, and brackets omitted).]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Chapman moved to compel the Alawi parties to answer interrogatories about the Alawi parties' deposit of Chapman's security-deposit funds as well as the deposit of security-deposit funds of tenants of other properties owned by the Alawi parties into the same account. Chapman claimed this information was necessary to prove Chapman's conversion claim so that Chapman could know the total amounts required to be in the Alawi parties' account to cover all security deposits. Chapman noted that the Alawi parties did not obtain a bond on the security deposits until March 7, 2014, which was after Chapman had begun his tenancy. In response, the Alawi parties argued that information regarding the deposit of security-deposit funds from the tenants of the Alawi parties' other properties had nothing to do with Chapman's security deposit, and that such information was private, sensitive, and irrelevant. The Alawi parties asserted that Chapman's request was part of a fishing expedition. The Alawi parties nonetheless agreed to provide limited discovery regarding the account in which Chapman's security deposit was

-14-

located, including information regarding the deposit and withdrawal of Chapman's security-deposit funds and the monthly balances of the account in which Chapman's security-deposit funds were located during the relevant period. At a motion hearing on December 3, 2014, the trial court ruled:

> Okay. I'm going to deny the motion for now. I think that there are other – there may be other ways to get the answers that you need or to determine that the answer can't be had which is, is where I think this inquiry may be headed.

> But I'm not going to order – I'm not going to order the discovery until you've tried some other ways to find the answers that you need. Especially given that the, the account contains operating capital also. And it's not a matter of looking for fifty deposits in a year and fifty withdrawals in a year, it's getting into the entire banking operation which is – the fact that it's intrusive is Mr. Alawi's fault for comingling those funds with operating funds, but I think it may also be a wild goose chase if that's what's been going on, is that the money is all comingled so that it's impossible to tell whether there's enough money in there.

On the same date, the trial court entered an order denying Chapman's motion to compel.

On December 5, 2014, the Alawi parties filed a motion for an order to show cause, noting that intervening plaintiff Catherine M. Radovich, as personal representative of the estate of Garrick P. Roemer, deceased, had served a subpoena on Talmer West Bank, seeking bank-account statements from November 4, 2012, through March 15, 2014, for Alawi doing business as Michigan Rental. Although the Alawi parties had filed a motion for a protective order seeking to quash the subpoena and forwarded a copy of that motion to Talmer West Bank with written instructions not to release any documents pending an agreement of the parties or a decision on the motion, Talmer West Bank released the bank records to Radovich's counsel. The records were then copied and disseminated to counsel for the other parties in this case, including the Alawi parties and Chapman. According to the Alawi parties, these records contained voluminous and detailed financial information of both a personal and a business nature that was not relevant to this case, and the trial court had previously entered a protective order in March 2014 prohibiting the disclosure of such records when they were requested through a subpoena issued by Chapman to the same bank. The Alawi parties therefore requested an order requiring the return of these records.

The trial court entered the requested order to show cause. In response to the Alawi parties' motion, Chapman argued that the banking records were relevant to the issues in the case and the Alawi parties should not be shielded from producing records concerning the account in which Chapman's security-deposit funds were located. Chapman contended that the Alawi parties lacked a reasonable expectation of privacy in bank records.

At a December 17, 2014, motion hearing, the trial court stated, in relevant part:

> So the bank made a mistake. The bank should not have supplied the records to you but you took advantage of the mistake and despite the fact that

there was a motion for protective order pending and a valid objection to the subpoena you did whatever you wished to do with those records anyway.

* * *

Mr. [Mark A.] Hopper [the Alawi parties' counsel] your motion is granted. The defendant – I'm sorry the Plaintiffs will return to Mr. Hopper all copies of the – the subpoenaed records and Mr. Chapman if you have another argument about why you should have those records than [sic] you bring it properly before the Court. I'm not gonna hear it today.

On December 18, 2014, the trial court entered an order providing that the released bank records were protected against disclosure, prohibiting the further use or dissemination of the bank records, and requiring Chapman and intervening plaintiffs to forward to the Alawi parties' counsel all copies of the bank records and to delete all electronic versions of the records.

On appeal, Chapman again argues that the Alawi parties lacked a reasonable expectation of privacy in their bank records that would give them standing to challenge the subpoena issued to the bank. Chapman contends that the alleged intrusiveness of the discovery request was not a ground for denying discovery. According to Chapman, the trial court failed to articulate a valid reason to deny discovery, such as that the bank records were privileged or irrelevant. Chapman's argument is unavailing.

Chapman fails to present arguments contesting the true bases for the trial court's decisions on this issue. In denying Chapman's motion to compel, the trial court did not definitively rule out granting the requested discovery; instead, the court stated it would not order discovery until Chapman tried to find other ways to obtain the answers that Chapman needed regarding whether the Alawi parties maintained sufficient funds to repay Chapman his security deposit. The trial court noted that discovery regarding the account may amount to a "wild goose chase" given that the Alawi parties comingled the security-deposit funds with operating capital such that it may be impossible to determine whether there were sufficient funds in the account. On appeal, Chapman fails to address this rationale. That is, Chapman does not explain (1) whether he attempted, in accordance with the trial court's comments, to find other means of getting the information he needed without obtaining the bank records; or (2) how discovery of the records would have led to useful information in this case given the comingling noted by the trial court. Chapman's inadequate briefing on this point amounts to abandonment of the issue. *McIntosh*, 282 Mich App at 484. And because Chapman has not contested the basis of the trial court's decision, he has not established entitlement to relief. *Derderian*, 263 Mich App at 381.

Chapman also fails to adequately address the trial court's rationale for granting the protective order barring the further use or dissemination of the improperly-released bank records and requiring the return or destruction of those records. It is apparent that the trial court was understandably concerned about the actions of counsel for Chapman and intervening plaintiffs in taking advantage of the bank's mistaken release of the records when a motion for a protective order and an objection to the subpoena were pending. See MCR 2.305(B)(2) (stating that if an objection is made to a subpoena for the production of documents, "the party serving the subpoena is not entitled to inspect and copy the materials without an order of the court in which

the action is pending"). The trial court's order requiring the return or destruction of the records was a reasonable effort to enforce the trial court's authority to control the discovery process. See generally, *Maldonado v Ford Motor Co*, 476 Mich 372, 375; 719 NW2d 809 (2006) (noting "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Whether the banking records were ultimately discoverable is a separate question from the propriety of the trial court's attempt to address the behavior of counsel for Chapman and intervening plaintiffs in exploiting the mistaken release of the bank records. By failing to address the trial court's true rationale, Chapman has abandoned the issue and is not entitled to relief regarding this issue. *McIntosh*, 282 Mich App at 484; *Derderian*, 263 Mich App at 381.

Chapman next argues that the trial court erred in granting summary disposition to the Alawi parties on Chapman's conversion claim. We disagree.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (quotation marks and citations omitted). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 14; 779 NW2d 237 (2010). In addition, MCL 600.2919a(1)(a) provides for recovery of three times the amount of actual damages when a person is damaged as a result of "[a]nother person's stealing or embezzling property or converting property to the other person's own use." "[T]he separate statutory cause of action for conversion 'to the other person's own use' under MCL 600.2919a(1)(a) requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines*, 497 Mich at 340. "To support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004) (quotation marks and citations omitted).

MCL 554.604(1), a provision of the LTRA, provides:

The security deposit shall be deposited in a regulated financial institution. A landlord may use the moneys so deposited for any purposes he desires if he deposits with the secretary of state a cash bond or surety bond written by a surety company licensed to do business in this state and acceptable to the attorney general to secure the entire deposits up to $50,000.00 and 25% of any amount exceeding $50,000.00. The attorney general may find a bond unacceptable based only upon reasonable criteria relating to the sufficiency of the bond, and shall notify the landlord in writing of his reasons for the unacceptability of the bond.

Another provision of the LTRA, MCL 554.605, provides:

For the purposes of this act and any litigation arising thereunder, the security deposit is considered the lawful property of the tenant until the landlord

establishes a right to the deposit or portions thereof as long as the bond provision is fulfilled, the landlord may use this fund for any purposes he desires.

In dismissing Chapman's conversion claim, the trial court stated that the Alawi parties' purported removal of the security-deposit funds during the lease term from the bank account in which they had been placed did not constitute conversion. The trial court explained:

> There was not an intent to keep [the security deposit] or to claim ownership of it. And during that period of time, [Chapman] was not entitled to hold it or have use of it. It's a security deposit. It's not his – it's his money but it's not for him to use during that period of time and therefore it couldn't have been converted by the [Alawi parties] when there's no indication that the [Alawi parties] intended to keep it beyond the end of the lease term but for some other thing that happened which is claimed damage to the house. And that's the subject of other counts in the complaint or – and/or the – the companion case [filed by the Alawi parties]. That's my ruling on [the conversion claim].

The trial court's analysis was correct. Chapman voluntarily paid the funds at issue to the Alawi parties as a security deposit. As Chapman's landlords, the Alawi parties were entitled to hold Chapman's security deposit during the term of the lease. See MCL 554.601(e) (defining a security deposit as "a deposit, in any amount, paid by the tenant to the landlord or his or her agent to be held for the term of the rental agreement, or any part of the term . . ."). The Alawi parties have never disputed Chapman's right to recover the value of the security deposit, either as a direct payment or as a credit against any sums that are adjudicated to be owed to the Alawi parties. Indeed, in their action to recover unpaid rent and other damages, the Alawi parties deducted from their damages claim a sum that was twice the amount of the security deposit paid by Chapman and his co-tenants, thereby further confirming that the Alawi parties recognized Chapman's ownership of the security-deposit funds. Chapman relies on the fact that the Alawi parties withdrew the security-deposit funds from the designated account before obtaining a surety bond in March 2014.[7] This does not alter the facts that (1) the Alawi parties obtained the security-deposit funds from Chapman with his consent and (2) the Alawi parties never contested Chapman's ownership of the security-deposit funds or his right to the return of the funds.

---

[7] In discovery responses, Alawi explained that

> during the period in question in the Request, Michigan Commerce Bank became unstable and I reasonably determined that the funds in the subject account were at risk. Based on such determination, I transferred the funds in the subject account (which consisted of security deposits, rents and operating funds) over time to another financial institution. Because of the rapidity of events involving Michigan Commerce Bank, it never crossed my mind to notify the Plaintiffs of the change in financial institutions, and I did not do so. My available cash resources on deposit at banks during the period in question in the Request never dropped below $4,562.50 [the amount of the security deposit of Chapman and his cotenants].

-18-

Chapman fails to establish that the withdrawal of the funds from the designated account satisfies the elements of a conversion claim. The trial court properly granted summary disposition to the Alawi parties on Chapman's conversion claim.

Next, Chapman argues that the trial court clearly erred in denying Chapman's request for sanctions against the Alawi parties' counsel for filing a motion for a second order to show cause regarding the Alawi parties' bank records. We disagree. This Court has explained:

> This Court reviews de novo whether the trial court properly interpreted and applied the relevant court rules to the facts and reviews for clear error the trial court's determination whether to impose sanctions under MCR 2.114. A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made. [*Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016) (quotation marks, citations, and brackets omitted).]

MCR 2.114 provides, in relevant part:

> (D) Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (E) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.
>
> (F) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCR 2.625(A)(2) states: "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591 provides:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

"[I]f a violation of MCR 2.114(D) has occurred, the sanctions provided for by MCR 2.114(E) are mandatory." *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008). Likewise, an award of sanctions is mandatory under MCL 600.2591(1) if the action or defense is found to be frivolous. *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 268; 548 NW2d 698 (1996). The purpose of sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (quotation marks and citation omitted). A party should not be penalized for asserting a claim that "initially appears viable but later becomes unpersuasive." *Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991). "Not every error in legal analysis constitutes a frivolous position." *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002). The mere fact that a court rejects a party's legal position does not mean that the party's position was frivolous. See *id*. "The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted. That the alleged facts are later discovered to be untrue does not invalidate a prior reasonable inquiry." *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003) (citation omitted).

On February 24, 2015, the Alawi parties filed a motion for a second order to show cause regarding the bank records. The Alawi parties asserted that, in February 2015, Chapman served a discovery request on the Alawi parties that contained detailed data and information that could only have come from the bank records that the trial court had previously ordered must not be used or disseminated. The Alawi parties asserted that Chapman and his counsel had violated the trial court's order and should be held in contempt of court. On February 25, 2015, the trial court

entered an order requiring Chapman's counsel to show cause why they should not be held in contempt and why other relief should not be granted to the Alawi parties. Chapman's counsel filed responses objecting to the order to show cause and opposing the Alawi parties' motion. Chapman's counsel denied that they had retained and used the bank records. Chapman's counsel asserted that the information contained in the discovery requests came from other materials in the case, including the lease agreement, which contained the full amount of the security deposit, a copy of a check that Chapman had provided to the Alawi parties as payment for his share of the security deposit, the surety bond, and other information provided by the Alawi parties. Chapman's counsel sought sanctions on the grounds that the Alawi parties' motion for an order to show cause was frivolous.

At a motion hearing on March 11, 2015, the trial court dismissed the show-cause order but denied the request for sanctions by Chapman's counsel. Before the court ruled, the Alawi parties' counsel acknowledged, after reading the response of Chapman's counsel, that the information could have been obtained from sources other than the bank records. Therefore, the Alawi parties' counsel conceded that he could no longer argue in good faith that the discovery requests were evidence that Chapman's counsel had retained the bank records. In denying the request for sanctions by Chapman's counsel, the trial court recounted the history of the litigation, i.e., that the bank had mistakenly released its records concerning the Alawi parties, and those records had then been disseminated by counsel for Chapman and intervening plaintiffs to their experts and clients while an objection to the subpoena and a motion for a protective order were pending. The trial court further stated:

> [Chapman's counsel] knew that there was an objection to the subpoena, whether they received it themselves or not. They knew that there was a motion for protective order pending and they received the [mistakenly released bank information,] shared it among themselves and others while the motion was pending.
>
> So I, I give that to you by way of explaining why [the Alawi parties' counsel] would be extremely sensitive to the dissemination of information.
>
> Now should he have recognized that those numbers [in the discovery requests] would correspond directly to the amounts of security deposits? Maybe, maybe even more than maybe he should have recognized that, but the request didn't say the amount – there was no parenthetical phrase there saying the amount of the security deposit being nine hundred and whatever dollars.
>
> And these folks hate each other so much that neither one of them will call the other and say hey where did you get those numbers, why are you doing that or I got your motion for contempt did you realize these are the numbers.
>
> So I'm not going to sanction [the Alawi parties' counsel] in any way. I'm dismissing the, the show cause against [Chapman's counsel], but there's a history here that might not have come through to [the attorney for Chapman's counsel] as you were reviewing the file and if you want to make a complaint to the, the, the Attorney Grievance Commission I'll leave that to you, but I don't see that what

-21-

[the Alawi parties' counsel] did here was sanctionable in light of everything else that has happened in this case.

On April 1, 2015, the trial court entered an order finding that Chapman and his counsel had not violated the court's prior order regarding bank records in preparing their discovery request. On May 4, 2015, Chapman filed a formal motion for sanctions despite the court's earlier oral ruling that it would not award sanctions. Following a hearing on May 13, 2015, the trial court entered an order on May 15, 2015, denying Chapman's motion for sanctions.

On appeal, Chapman challenges the trial court's reasoning expressed at the March 11, 2015, hearing for refusing to award sanctions against the Alawi parties' counsel. According to Chapman, the trial court's summary of the history of this litigation reflected that the trial court was "keeping score" and allowing prior matters in the litigation to influence the determination of whether to grant sanctions against the Alawi parties' counsel for filing the motion for a second show-cause order. Chapman's argument is unavailing. The trial court recounted the history of the litigation not as a way to "keep score" but rather to explain why it was understandable that the Alawi parties' counsel was sensitive to the possible dissemination of financial information about his clients. That is, the trial court explained that there had earlier been a mistaken release of bank records and that counsel for Chapman and intervening plaintiffs then disseminated those records even though an objection to the subpoena for those records and a motion for a protective order were pending. This led to the entry of an order requiring counsel for Chapman and intervening plaintiffs to destroy or return the mistakenly-released and improperly-disseminated records. A subsequent discovery request from Chapman's counsel appeared to the Alawi parties' counsel to contain information that could only have been obtained from the bank records, which led the Alawi parties' counsel to file the motion for a second order to show cause. The trial court noted that the Alawi parties' counsel perhaps should have realized the information contained in the discovery request could have been obtained from materials other than the bank records, but that the sensitivity on the part of the Alawi parties' counsel to the possible use of information obtained from the bank records was nonetheless understandable given the history of this litigation, particularly the improper dissemination of the bank records and the extremely hostile nature of the litigation. The fact that the Alawi parties' counsel made a mistake in thinking that the information in the discovery request could only have been obtained from the bank records—a mistake that the Alawi parties' counsel later candidly acknowledged at the motion hearing—does not establish that the initial position of the Alawi parties' counsel on this matter was frivolous. See *Kitchen*, 465 Mich at 663, *Jerico Constr*, 257 Mich App at 36, and *Louya*, 190 Mich App at 163. Overall, the trial court did not clearly err in denying Chapman's request for sanctions against the Alawi parties' counsel.

Chapman next argues that the trial court erred in granting summary disposition to the Alawi parties with respect to Chapman's claim of federal statutory violations regarding lead-based paint hazards. We disagree.

Statutory interpretation is a question of law we review de novo, as is the interpretation of administrative regulations. This standard applies to the interpretation of federal statutes and regulations, though reasonable administrative interpretations of regulations operating as statutory gap-fillers are entitled to deference. Clear and unambiguous statutory language is given its plain meaning,

and is enforced as written. [*In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 698; 736 NW2d 594 (2007) (quotation marks and citations omitted).]

In his fourth amended complaint, Chapman alleged that the Alawi parties violated provisions of the Residential Lead-Based Paint Hazard Reduction Act, 42 USC 4851 *et seq*. (RLPHRA), and the Toxic Substances Control Act, 15 USC 2601 *et seq*. (TSCA), and regulations under each act. Chapman asserted that the Alawi parties failed to provide notice of lead-based paint hazards and to maintain records of maintenance and repair activities. Chapman claimed that the Alawi parties' employees performed renovations, repairs, and painting at the rental property without proper licenses or certifications, without following required protocols to contain and eliminate lead dust, and without providing notice to Chapman of the hazardous nature of lead dust. As a result, Chapman claimed, he suffered damages and injuries that included expenses for medical diagnostic testing to determine whether he was exposed to lead or suffered lead poisoning, along with "unknown" injuries that "may develop" as a result of being exposed to lead at the rental property.

A federal statute, 42 USC 4852d(a)(1), requires the Secretary and the Administrator of the Environmental Protection Agency (EPA) to promulgate regulations for the disclosure of lead-based paint hazards in "target housing"[8] that is offered for sale or lease. The regulations were to require that the lessee be provided with a lead-hazard information pamphlet as prescribed by the EPA and that disclosure be made to the lessee of any known lead-based paint hazards. 42 USC 4852d(a)(1)(A) & (B). A person who knowingly violates these provisions "shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 USC 4852d(b)(3).

The promulgated regulations under the RLPHRA are set forth in the Code of Federal Regulations. Under the federal regulations, owners of properties are not required "to evaluate the property(ies) for the presence of lead-based paint hazards or take any action to control these conditions if one or more of them is identified." 40 CFR 745.61(c). Regulations concerning information-distribution, certification, training, and work-practice requirements apply to "renovations performed for compensation in target housing" unless lead levels are below a certain threshold. See 40 CFR 745.82(a). A renovation is defined as "the modification of any existing structure, or portion thereof, that results in the disturbance of painted surfaces . . . ." 40 CFR 745.83. This includes the removal, modification, or repair of painted surfaces, sanding or scraping that may generate paint dust, and the removal of walls, ceilings, or plumbing. 40 CFR 745.83. However, "minor repair and maintenance activities" do not constitute a "renovation." 40 CFR 745.83. "Minor repair and maintenance activities" generally include activities "that disrupt 6 square feet or less of painted surface per room for interior activities or 20 square feet or less of painted surface for exterior activities[.]" 40 CFR 745.83. Emergency renovations are exempt from the information-distribution, warning-sign, containment, waste-handling, training,

---

[8] "Target housing" generally means "housing constructed prior to 1978[.]" 42 USC 4851b(27). It is undisputed that the house on the rental property in this case was constructed before 1978.

-23-

and certification requirements set forth in the regulations. 40 CFR 745.82(b). Emergency renovations "are renovation activities that were not planned but result from a sudden, unexpected event (such as non-routine failures of equipment) that, if not immediately attended to, presents a safety or public health hazard, or threatens equipment and/or property with significant damage." 40 CFR 745.82(b). Emergency renovations are not exempt from the cleaning, cleaning-verification, and recordkeeping requirements of the regulations. 40 CFR 745.82(b). The regulations implement the provisions of 42 USC 4852d that impose requirements on the sale or lease of target housing; under these regulations,

> a seller or lessor of target housing shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or lead-based paint hazards; provide available records and reports; provide the purchaser or lessee with a lead hazard information pamphlet; give purchasers a 10–day opportunity to conduct a risk assessment or inspection; and attach specific disclosure and warning language to the sales or leasing contract before the purchaser or lessee is obligated under a contract to purchase or lease target housing. [40 CFR 745.100.]

In this case, Chapman asserted that the Alawi parties performed several repairs that amounted to renovations under the federal regulations, including removing and replacing sagging drywall in the bedroom and living room; repairing a broken window; scraping, sanding, and repainting the front porch; repairing cracked and peeling paint in the kitchen; and repairing the plaster ceiling at an exterior cellar door. Because these activities supposedly comprised renovations, Chapman contended that the Alawi parties were subject to the notice, work-practice, certification, and training requirements of the federal regulations. The Alawi parties argued that these activities constituted either emergency renovations or minor repair and maintenance activities that were excluded from the definition of "renovations."

The trial court ruled that given the small repair area, the replacement of drywall in the bedroom was a minor repair rather than a renovation, and that the drywall replacement in the living room was too large to constitute a minor repair, but it was an emergency renovation due to a plumbing-equipment failure that created a threat of significant damage to person or property. The court noted that an emergency renovation is not exempt from the cleaning, cleaning-verification, and recordkeeping requirements of the federal regulations. The trial court thus granted summary disposition to the Alawi parties regarding the replacement of the drywall in the bedroom but denied summary disposition concerning the replacement of the drywall in the living room. The court concluded that the repair of the broken window was not a renovation because it did not require the disturbance of any painted surface and thus granted summary disposition to the Alawi parties on that part of the claim. The court found no violation of the federal regulations regarding the alleged sanding, scraping, and painting of the front porch and thus granted summary disposition to the Alawi parties on that part of the claim. Chapman failed to present sufficient evidence to establish that the repair of the plaster ceiling at the exterior cellar door or the repair of the cracked and peeling paint in the kitchen constituted renovations rather than minor repairs or maintenance activities. Overall, the trial court granted summary disposition to the Alawi parties on all aspects of the lead-based paint hazard claim except for whether the replacement of the drywall in the living room was a renovation within the meaning of the RLPHRA and federal regulations and whether Chapman received the information pamphlet required by the RLPHRA (with respect to which the court had earlier concluded that a

-24-

factual issue existed). Later in the litigation, however, the court dismissed the entire count regarding lead-based paint hazards because the alleged damages were for a fear of injury, which was not compensable.

On appeal, Chapman asserts without elaboration "that the classification of the repairs in the bedroom and in the living room were questions of fact for the jury to decide." Chapman also states that, with respect to the sanding, scraping, and painting of the front porch, the trial court "flat out missed" the alleged fact that "the lead dust, chips, and scrapings . . . traveled throughout the house, yard, siding, window jams, porch steps, etc." Chapman then asserts that "that the classification of the repair of the broken window, the sanding, scraping and painting of the entire porch, and [the Alawi parties'] requirement to provide records to Chapman were questions of fact for the jury to decide." Chapman cites no authority and provides no reasoning to support his contention that questions of fact existed on these issues. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson*, 457 Mich at 243 (quotation marks and citation omitted). Failure to adequately brief an issue constitutes abandonment. *McIntosh*, 282 Mich App at 484. We discern no basis to disagree with the trial court's thorough analysis addressing each aspect of the claim concerning lead-based paint hazards.

In any event, the trial court ultimately dismissed the entire lead-based paint hazard claim on the ground that Chapman had failed to present evidence that he suffered any compensable damages. Chapman contends that he has incurred expenses for blood and urine laboratory testing and medical consultations to determine the extent of his exposure to lead. He argues that no federal court has ruled that damages under the RLPHRA, the TSCA, and federal regulations are limited to personal injury or lead poisoning. Chapman's arguments are unavailing. The trial court correctly concluded that Chapman failed to present evidence of compensable damages with respect to the lead-based paint hazard count. Chapman has not alleged or presented evidence that he suffers from lead poisoning. What Chapman is asking for is that he be entitled to collect damages for the expense of medical testing and consultation, i.e., monitoring his health. But such expenses incurred due to the fear of a possible future injury are not compensable damages in the absence of a present injury. See *Henry v Dow Chemical Co*, 473 Mich 63, 77-79; 701 NW2d 684 (2005) (in the analogous context of a negligence action, medical-monitoring expenses incurred due to the fear of a future physical injury are not compensable). Chapman cites no authority suggesting that a different rule should apply in this context to allow recovery of expenses for medical monitoring in the absence of a present physical injury. The trial court thus properly granted summary disposition to the Alawi parties on Chapman's claim of federal statutory violations regarding lead-based paint hazards.

Chapman argues that the trial court erred in dismissing Chapman's claims for breach of the covenant of fitness and habitability, negligence, premises liability, and nuisance, all premised on allegations that he suffered damages arising from the presence of toxic mold at the rental property. We disagree.

MCL 554.139(1) provides:

In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants willful or irresponsible conduct or lack of conduct.

"[A] breach of the duty to maintain the premises under MCL 554.139(1)(a) or (b) would be construed as a breach of the terms of the lease between the parties and any remedy under the statute would consist exclusively of a contract remedy." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425-426; 751 NW2d 8 (2008). "[T]ypically, a plaintiff's remedy for breach of contract is limited to damages that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Id*. at 426 n 3 (quotation marks and citations omitted).

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Quinto v Woodward Detroit CVS, LLC*, 305 Mich App 73, 75; 850 NW2d 642 (2014) (quotation marks and citation omitted). With respect to the element of causation, this Court has explained:

Proving causation requires proof of both cause in fact and proximate cause. Cause in fact requires that the harmful result would not have come about but for the defendant's negligent conduct. Cause in fact may be established by circumstantial evidence, but such proof must facilitate reasonable inferences of causation, not mere speculation. A plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. A mere possibility of such causation is not sufficient; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict in favor of the defendant. Normally, the existence of cause in fact is a question for the jury to decide, but if there is no issue of material fact, the question may be decided by the court. [*Genna v Jackson*, 286 Mich App 413, 417-418; 781 NW2d 124 (2009) (quotation marks and citations omitted).]

"In a premises liability action, a plaintiff must prove the elements of negligence[.]" *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).

Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land. Ordinary negligence claims are grounded on the underlying premise that a person has a duty to

conform his or her conduct to an applicable standard of care when undertaking an activity. In contrast, in a premises liability claim, liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land. Thus, when an injury develops from a condition of the land, rather than emanating from an activity or conduct that created the condition on the property, the action sounds in premises liability. [*Lymon v Freedland*, 314 Mich App 746, 756; 887 NW2d 456 (2016) (quotation marks, citations, and brackets omitted).]

"Historically, Michigan has recognized two distinct versions of nuisance, public nuisance and private nuisance." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). "A public nuisance is an unreasonable interference with a common right enjoyed by the general public." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 190; 540 NW2d 297 (1995). "The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question." *Adkins*, 440 Mich at 303. Chapman does not expressly indicate whether he is claiming a public nuisance or a private nuisance. He does not allege any facts suggesting an unreasonable interference with a common right enjoyed by the general public; his allegations are centered on the purported presence of toxic mold at the rental property, which is a private residence. We therefore construe his claim as alleging a private nuisance. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id*. at 302.

> The elements of a private nuisance are satisfied if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. To prove a nuisance, significant harm to the plaintiff resulting from the defendant's unreasonable interference with the use or enjoyment of property must be proven. [*Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 431-432; 770 NW2d 105 (2009) (citation omitted).]

In connection with this issue, Chapman offers a cursory criticism of the trial court's ruling at the conclusion of a *Daubert*[9] hearing excluding the testimony of two of Chapman's experts and limiting the testimony of a third expert, Dr. Mark Banner, such that Dr. Banner could testify regarding his testing of the rental property for mold spores but could not testify regarding the health effects of living in a house with mold. A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. This Court reviews de novo questions of law underlying evidentiary rulings. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). Chapman asserts that the trial court's decision was bereft of a proper analysis, but Chapman fails to elaborate on

---

[9] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

this cursory criticism. Chapman may not leave it to this Court to rationalize his bare assertion; this aspect of his argument is therefore abandoned. *Wilson*, 457 Mich at 243; *McIntosh*, 282 Mich App at 484. The trial court explained its analysis sufficiently by noting that Dr. Banner's expertise was in testing for mold spores and knowing which mold spores were which but that his belief regarding the deleterious health effects of residing in a house containing mold was anecdotal and lacked a sufficient scientific basis. The trial court also discussed convincingly the lack of scientific support for the causation testimony of Chapman's two proposed medical experts that the court excluded because of this lack of support. In the absence of any substantive appellate argument by Chapman, we can discern no basis to conclude that the trial court's ruling at the conclusion of the *Daubert* hearing fell outside the range of reasonable and principled outcomes.

The trial court properly granted summary disposition on the mold-related claims because Chapman failed to present evidence that his claimed injuries were caused by the alleged presence of toxic mold at the rental property. The trial court excluded the testimony of Chapman's proposed medical experts. Although Dr. Banner was permitted to testify regarding his testing of the rental property for mold spores, he was not permitted to testify regarding the health effects of living in a house containing mold. Chapman has failed to present any admissible expert testimony that his claimed health problems were caused by mold spores at the rental property.

Nor has Chapman presented any other evidence to establish causation. In *Genna*, 286 Mich App at 418, this Court held that direct expert testimony is not required to establish that a toxin was the cause of the plaintiff's injury. In *Genna*, *id*. at 415, a water heater in the defendant's condominium unit ruptured while she was gone for many months; as a result, the condominium unit became infested with "patches of mold of all different colors all over the walls and ceilings in her kitchen, family room, and dining area." The interior of the condominium unit was so grossly contaminated that the inside needed to be demolished. *Id*. at 416. The plaintiffs' children, who lived in the adjoining unit, began experiencing flu-like symptoms that included diarrhea, vomiting, congestion, and nosebleeds. *Id*. at 415. The children's health condition required numerous trips to the hospital and a doctor's office. *Id*. at 420. The plaintiffs' experts confirmed the deleterious health effects of mold and that the mold in the condominium units was toxic. *Id*. at 420-421. The children had been healthy before their exposure to mold, and their health improved after they moved out of the condominium unit. *Id*. at 421. In finding sufficient evidence to submit the case to the jury, this Court reasoned:

> This is not a complicated case: the children were sick, the children were removed from the home, the mold was discovered, and the children recovered. Testimony established extremely high levels of mold and that mold can cause the types of symptoms suffered by the children. It does not take an expert to conclude that, under these circumstances, defendant more likely than not is responsible for plaintiff's injuries. Here, there was ample circumstantial evidence that would facilitate reasonable inferences of causation, not mere speculation. [*Id*. (quotation marks, brackets, and citations omitted).]

Unlike in *Genna*, plaintiff has failed to present circumstantial evidence of a causal link between the alleged presence of mold and any injuries. In contrast to *Genna*, there is no evidence that Chapman sought medical attention for mold-related conditions while living at the

rental property.[10]  Although Chapman visited medical doctors a few months after moving out of the rental property, his doctors were barred from testifying regarding his alleged mold-related conditions.  In contrast to the significant visible mold infestation of multiple colors that occurred in *Genna*, Chapman's housing-inspection expert observed no visible mold at the rental property.  Dr. Banner conducted air testing that determined that some mold spores were present, but the record does not even remotely support a conclusion that the mold spores detected in this case were substantial enough to establish a reasonable inference of causation.

Chapman has thus failed to present anything beyond speculation and conjecture, which are insufficient to establish the causation element of a negligence claim.  *Id*. at 418.  And because the elements of negligence must be proven in a premises-liability action, *Benton*, 270 Mich App at 440, Chapman's negligence and premises-liability claims were both properly dismissed.  Chapman has likewise failed to support his claim for breach of the implied covenant of fitness and habitability because he has not articulated any manner in which he has suffered damages arising naturally from the alleged breach of the covenants or that were in the contemplation of the parties when the contract was made.  *Allison*, 481 Mich at 426 n 3.  The lack of proof of causation also supported dismissal of the nuisance claims given that Chapman cannot establish that he suffered significant harm resulting from an unreasonable interference with his use or enjoyment of the property.  *Capitol Props Group*, 283 Mich App at 431-432.

Chapman next contends that the trial court abused its discretion in refusing to admit into evidence two governmental publications regarding the health effects of mold.  We disagree.

Hearsay is inadmissible except as provided by the Michigan Rules of Evidence.  MRE 802.  " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c).  The parties do not dispute that the governmental publications constitute hearsay; their disagreement is over whether the hearsay exceptions contained in MRE 803(8) or MRE 803(24) are applicable.

MRE 803(8) sets forth the following exception to the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCL 257.624.

MRE 803(8)(A) is inapplicable because the governmental publications regarding the health effects of mold are not related to the activities per se of the governmental entities.  See *Solomon v Shuell*, 435 Mich 104, 130; 457 NW2d 669 (1990) (opinion by ARCHER, J.) (stating that "MRE 803(8)(A) is limited to 'records or reports' describing the general activities of an

---

[10] Chapman sought medical attention for a foot infection while living at the rental property, but there is no evidence that this was caused by the alleged presence of mold at the rental property.

agency per se"), and *Hewitt v Grand Trunk Western R Co*, 123 Mich App 309, 326; 333 NW2d 264 (1983) (holding that an accident report was not related to the activities per se of a police agency). MRE 803(8)(B) is also inapplicable because there is no indication that the statements regarding the health effects of mold concerned matters that were observed by the unidentified authors of the governmental publications. The sources for the information contained in the documents are unknown. See *Bradbury v Ford Motor Co*, 419 Mich 550, 554; 358 NW2d 550 (1984) (MRE 803(8)(B) "reflects the narrow common-law rule which limits public reports of matters observed by agency officials to reports of objective data observed and reported by these officials."), and *Hewitt*, 123 Mich App at 327 (holding that an accident report did not fall within MRE 803(8)(B) because "the reporting officer had no firsthand knowledge of the facts contained therein").

MRE 803(24) provides the residual hearsay exception:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

The residual exception "may be used to admit statements that are similar to, but not admissible under, the categorical hearsay exceptions." *People v Katt*, 468 Mich 272, 290; 662 NW2d 12 (2003). However, the requirements of the residual exception "are stringent and will rarely be met, alleviating concerns that the residual exception[] will 'swallow' the categorical exceptions through overuse." *Id*. at 289. "To be admitted under MRE 803(24), a hearsay statement must: (1) demonstrate circumstantial guarantees of trustworthiness equivalent to the categorical exceptions, (2) be relevant to a material fact, (3) be the most probative evidence of that fact reasonably available, and (4) serve the interests of justice by its admission." *Id*. at 290. Chapman has not established that the statements in the governmental publications are relevant to a material fact. To be admissible, the proffered statements must be relevant to "a fact that is significant or essential to the issue or matter at hand." *Id*. at 292 (quotation marks, citation, and brackets omitted). The governmental publications contain generalized statements to the effect that mold may have deleterious health effects. Such broad policy assertions are not probative of whether Chapman's alleged injuries were caused by the presence of mold in the rental property. The publications also lack circumstantial guarantees of trustworthiness equivalent to the categorical hearsay exceptions. "[C]ourts should consider all factors that add to or detract from the statement's reliability." *Id*. There is no indication that the assertions in these documents are the product of peer-reviewed scientific research or even that the documents were prepared or reviewed by scientists. Because the governmental publications are not relevant to a material fact and are not sufficiently trustworthy, the trial court properly declined to admit these publications.

## II. DOCKET NO. 332711

Chapman argues that the trial court abused its discretion in setting aside two defaults that were entered against the Alawi parties for failing to answer Chapman's counterclaims in the Alawi parties' action. We disagree. "We review for an abuse of discretion a trial court's decision on a motion to set aside a default and whether to grant a default judgment. A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011) (citations omitted).

Assuming proper notice, see *Brooks Williamson & Assoc, Inc v Mayflower Constr Co*, 308 Mich App 18, 35-36; 863 NW2d 333 (2014), "[a] motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." MCR 2.603(D)(1).

> Good cause can be shown by: (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand. [*Shawl v Spence Bros, Inc*, 280 Mich App 213, 221; 760 NW2d 674 (2008) (quotation marks and citations omitted).]

This Court has identified the following factors that a trial court should consider in determining whether a party has shown good cause:

> (1) whether the party completely failed to respond or simply missed the deadline to file;

> (2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;

> (3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;

> (4) whether there was defective process or notice;

> (5) the circumstances behind the failure to file or file timely;

> (6) whether the failure was knowing or intentional;

> (7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);

> (8) whether the default judgment results in an ongoing liability (as with paternity or child support); and

(9) if an insurer is involved, whether internal policies of the company were followed. [*Id*. at 238.]

In determining whether a meritorious defense has been established, a court should consider whether the affidavit sets forth evidence that:

> (1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;

> (2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or

> (3) the plaintiff's claim rests on evidence that is inadmissible. [*Id*.]

These lists are not exhaustive or exclusive. *Id*. at 239. "[T]he trial court should consider only relevant factors, and it is within the trial court's discretion to determine how much weight any single factor should receive." *Id*. A trial court should base its decision on the totality of the circumstances. *Id*. at 237. Also, "the strength of the defense obviously will affect the 'good cause' showing that is necessary. In other words, if a party states a meritorious defense that would be absolute if proven, a lesser showing of 'good cause' will be required . . . ." *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 233-234; 600 NW2d 638 (1999).

In his motion to set aside the first default, counsel for the Alawi parties indicated that he apparently overlooked the counterclaims given the numerous issues involved in this litigation. Counsel noted that the matter had been vigorously litigated in both of the consolidated cases, and asserted that neither he nor his clients had been dilatory in taking action on this matter. At the hearing on the motion to set aside the first default, counsel for the Alawi parties again admitted his oversight in the matter. He noted that the essence of the defense to the counterclaims had been asserted in the consolidated case filed by Chapman, and that there had been extensive litigation on the matter. Chapman's counterclaims were identical to his claims in his own action, which had been "litigated over and over and over again." Hence, the defenses to the counterclaims would be identical to the defenses to Chapman's claims in his own action. There would thus be no surprises or prejudice to Chapman from setting aside the default. The trial court ruled from the bench:

> The fact that, that Chapmans [sic] did not [earlier] realize that there wasn't an answer demonstrates that there was no prejudice in the [Alawi parties'] failure to answer.

> And to say that the [Alawi parties] have participated fully in the litigation would be an understatement. I can understand that, that a deadline to answer might have been missed and I understand why it was missed. This has been an extremely active case and I'll grant the motion to vacate the default.

The trial court's decision fell within the range of reasonable and principled outcomes. Although the neglect or carelessness of a litigant or attorney is not typically a ground for setting aside a default, *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 554; 872 NW2d 412 (2015), there are many unique features of the present case that distinguish it from a typical case. The

counterclaims asserted by Chapman in the Alawi parties' action were identical in all relevant respects to the claims asserted by Chapman in his own action. Those claims were—to put it mildly—fully litigated in Chapman's action. The extent of litigation is reflected in the fact that the records for these two cases fill up seven boxes. The trial court reasonably concluded that it was understandable in this context that the Alawi parties' counsel overlooked the counterclaims. Indeed, Chapman's own counsel admitted at the motion hearing that she had failed to realize until late in the litigation that the counterclaims had not been answered. Chapman was not at all prejudiced by the failure of the Alawi parties to answer the counterclaims given that the identical claims were answered and litigated extensively in the companion case. On these facts, the Alawi parties provided a reasonable excuse for the failure to file an answer. In addition, a meritorious defense existed given that the identical claims in Chapman's action were not only answered but were fully litigated and ultimately dismissed by summary disposition.

Likewise, in moving to set aside the second default (which was entered after the Alawi parties answered Chapmans October 8, 2014, counterclaim but failed to answer his June 23, 2014, counterclaim), the Alawi parties moved to set aside that default and noted that Chapman's June 23, 2014, counterclaim asserted the same claims that had been pleaded in Chapman's own action, which the Alawi parties had answered. Chapman was thus aware of the Alawi parties' defenses. The prior existence of the claims asserted in the June 23, 2014, counterclaim and the fact that the substance of those claims had been at issue for months was asserted to comprise good cause for the Alawi parties' failure to file an answer to the counterclaim. A meritorious defense was again asserted to exist because the Alawi parties had prevailed on the identical claims raised in Chapman's own action. Hence, the Alawi parties argued, the second default should be set aside. The trial court granted the Alawi parties' motion to set aside the second default because "all the matters at issue in this case have been litigated and dealt with on the merits." The trial court's decision to set aside the second default fell within the range of reasonable and principled outcomes for the same reasons articulated with respect to the setting aside of the first default. The extent of litigation in this case and the fact that the same claims had been asserted, answered, and litigated to completion in the companion case provided a reasonable excuse for the failure to file an answer, and the fact that the identical claims had been summarily dismissed in the companion case established a meritorious defense.

Chapman notes that the Alawi parties did not file with their motions to set aside the defaults an affidavit of facts showing a meritorious defense as discussed in MCR 2.603(D)(1). Chapman fails to cite authority establishing that the failure to file the affidavit precludes setting aside the default where a meritorious defense has otherwise been articulated in the motion and on the record at the motion hearing. Not only did the Alawi parties identify their meritorious defenses in their motions to set aside and orally in court, but the defenses were in fact asserted and fully litigated with success in Chapman's action in the consolidated case. On the facts of this case, the failure to file an affidavit showing a meritorious defense did not bar setting aside the defaults. See, generally, *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 273 n 3; 803 NW2d 151 (2011) (noting that setting aside default judgments even though the affidavits were filed after the motions to set aside was consistent "with the general principle that defaults are not favored and doubts generally should be resolved in favor of the defaulting party")

(quotation marks, citation, and brackets omitted),[11] and *Sylvania Savings Bank v Turner*, 27 Mich App 640, 649-650; 183 NW2d 894 (1970) (reviewing the merits of the defaulting party's claim without an affidavit of meritorious defense having been filed).

Chapman next argues that the trial court erred in dismissing Chapman's counterclaims and in striking his affirmative defenses in the Alawi parties' action. We disagree. A trial court's decision whether to strike a pleading is reviewed for an abuse of discretion. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003).

Chapman asserts that there was no basis for an involuntary dismissal of the counterclaims under MCR 2.504(B), but there is no indication that the trial court dismissed the counterclaims under that subrule. We construe the trial court's decision as granting summary disposition to the Alawi parties for the same grounds on which it summarily dismissed Chapman's claims in his own action. Chapman does not dispute that his counterclaims were identical in all relevant respects to the claims asserted in his own action, all of which the trial court had already summarily dismissed. The Alawi parties asked the trial court to "apply all of the prior decisions on the merits to the counter-claims and dismiss them . . . ." The trial court expressed agreement with the Alawi parties that "all the matters at issue in this case have been litigated and dealt with on the merits." The trial court then dismissed the counterclaims, subject to the disposition of the security deposit held by the Alawi parties. In short, it is apparent that the trial court applied its rationale for dismissing Chapman's claims in his own action to his identical counterclaims asserted in the Alawi parties' action. We discern no error in the dismissal of the counterclaims on this ground. As discussed earlier, Chapman has failed to establish any error in the dismissal of the claims in his own action; he has therefore likewise failed to establish an error in the dismissal of his identical counterclaims.

Chapman also challenges the dismissal of his affirmative defenses. The Alawi parties asked the trial court to strike Chapman's affirmative defenses because Chapman had replicated his claims from his own action and his counterclaims in his affirmative defenses; the Alawi parties argued that the affirmative defenses could not succeed given the trial court's previous summary dismissal of the claims in his own action. It appears that the trial court adopted this rationale in stating that "all the matters at issue in this case have been litigated and dealt with on the merits." The trial court struck all of Chapman's affirmative defenses except for his affirmative defense concerning the Sykes release (discussed below). In any event, any error in the striking of Chapman's affirmative defenses other than the one based on the Sykes release is harmless. With respect to the Alawi parties' claims against Chapman, the trial court granted summary disposition to Chapman on the basis of the Sykes release. Hence, the striking of Chapman's affirmative defenses other than on the basis of the Sykes release did not affect the outcome of the case, making any error harmless such that reversal would not be required. See MCR 2.613(A).

---

[11] We note that the default judgments in *Lawrence M Clarke* were set aside under MCR 2.612, which does not expressly require filing an affidavit of meritorious defense. See *Lawrence M Clarke*, 489 Mich at 273.

On cross-appeal, the Alawi parties argue that the trial court abused its discretion in allowing Chapman to amend his affirmative defenses to include the Sykes release and that the trial court erred in granting summary disposition to Chapman on the basis of the Sykes release. We disagree.

A trial court's decision whether to allow an amendment of pleadings to add an affirmative defense is reviewed for an abuse of discretion. *Ostroth v Warren Regency, GP, LLC*, 263 Mich App 1, 5; 687 NW2d 309 (2004), aff'd 474 Mich 36 (2006). "This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel*, 298 Mich App at 315.

> When the plaintiffs' claims are barred because of a release, summary disposition is proper under MCR 2.116(C)(7). The interpretation of a release presents a question of law that is reviewed de novo.
>
> > Contract law applies to disputes involving the terms of a release. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. The scope of a release is governed by the intent of the parties as it is expressed in the release. If the language is unambiguous, it must be construed, as a whole, according to its plain and ordinary meaning. [*Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 373-374; 838 NW2d 720 (2013) (quotation marks and citations omitted).]

The Alawi parties contend that the trial court abused its discretion in permitting Chapman to amend his affirmative defenses to include the Sykes release. We disagree.

> Leave to amend should be freely granted when justice so requires. MCR 2.118(A)(2). However, leave to amend should not be granted in the face of undue delay, bad faith, or dilatory motive on the part of the movant, or undue prejudice to the opposing party by virtue of allowance of the amendment. [*Ostroth*, 263 Mich App at 5.]

There is no indication that Chapman's failure to seek amendment earlier was the result of bad faith or undue delay. Although the Sykes release was signed on October 16, 2015, Chapman represents that his counsel obtained a copy of the Sykes release on January 22, 2016, and then filed the motions to amend and for summary disposition on January 25, 2016. There is no basis to conclude that the Alawi parties were prejudiced by the amendment. As signatories to the Sykes release, they were already aware of the language of the release. "The mere fact that an amendment might cause a party to lose on the merits is not sufficient to establish prejudice." *Id*.

The Alawi parties argue that the trial court erred in granting summary disposition to Chapman with respect to the Alawi parties' claim for unpaid rent and other damages because Chapman was not an intended third-party beneficiary of the Sykes release. We disagree.

MCL 600.1405 concerns the rights of third-party beneficiaries and provides, in part:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

In *Romska v Opper*, 234 Mich App 512, 513-514; 594 NW2d 853 (1999), overruled in part by *Shay v Aldrich*, 487 Mich 648; 790 NW2d 629 (2010), the plaintiff entered into a settlement agreement with the insurer of one of two vehicles involved in a car accident with the plaintiff's vehicle. The release contained language releasing "all other parties, firms, or corporations who are or might be liable . . . ." *Romska*, 234 Mich App at 514. The plaintiff then sued the defendant, who was the driver of the other vehicle involved in the accident. *Id*. The trial court granted summary disposition to the defendant on the ground that the broad language of the release also released the defendant from liability, and this Court affirmed. *Id*. at 513, 515. This Court reasoned:

Because defendant clearly fits within the class of "all other parties, firms, or corporations who are or might be liable," we see no need to look beyond the plain, explicit, and unambiguous language of the release in order to conclude that he has been released from liability. There cannot be any broader classification than the word "all," and "all" leaves room for no exceptions. [*Id*. at 515-516 (quotation marks and citation omitted).]

This Court further held that it was inappropriate to consider parol evidence in determining the scope of the release because, among other things, "the language of the release is unambiguous and thereby precludes resort to allegedly contradictory parol evidence." *Id*. at 516.

In *Shay*, 487 Mich at 676, the Michigan Supreme Court "overrule[d] *Romska* to the extent that it prohibits a court from considering extrinsic evidence of the intended scope of a release when an unnamed party seeks to enforce third-party-beneficiary rights based on broad language included in a release from liability and an ambiguity exists with respect to the intended scope of that release." In *Shay*, 487 Mich at 651-652, the plaintiff sued officers of the Melvindale Police Department (the Melvindale Officers) and officers of the Allen Park Police Department (the Allen Park Officers) for assault. The plaintiff later executed releases with respect to the claims against the Allen Park Officers. *Id*. at 653. The releases contained language discharging the Allen Park Officers "together with all other persons, firms and corporations, from any and all claims, demands and actions which I have now or may have arising out of any and all damages, expenses, and any loss or damage resulting from [the incident in question]." *Id*. The Melvindale Officers sought summary disposition on the ground that the "all other persons" language in the releases effectively released the Melvindale Officers. *Id*. at 653-654. The trial court denied the Melvindale Officers' motion for summary disposition, but this Court reversed, reasoning in accordance with *Romska* that the unambiguous language of the releases of the Allen Park Officers also barred the claims against the Melvindale Officers. *Id*. at 654-656. The Supreme Court reversed this Court's decision and overruled *Romska* in part. *Id*. at 651, 676.

The Court in *Shay* summarized its holding as follows:

We conclude that courts may consider extrinsic evidence of the intended scope of a release when an unnamed party seeks to enforce third-party-beneficiary rights based on the broad release language but the evidence presented establishes that an ambiguity exists with respect to the intended scope of the release. [*Id.* at 660.]

The Court stated that unambiguous contractual language is generally construed according to its plain meaning but that extrinsic evidence may be considered to determine the parties' intent if the contractual language is ambiguous. *Id.* The Melvindale Officers' counsel conceded that the plaintiff and the Allen Park Officers did not intend to release the Melvindale Officers. *Id.* at 662. The Court stated that "the Melvindale Officers qualify as third-party beneficiaries under the applicable statute because on its face, the release language unambiguously releases 'all other persons.'" *Id.* at 665. "On the face of the release documents, the Melvindale Officers are third-party beneficiaries of the promise, i.e., the release from liability, and may seek to enforce it." *Id.* at 667. However, extrinsic evidence may be used to demonstrate that a latent ambiguity exists. *Id.*

A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue. [*Id.* at 668 (quotation marks and citations omitted).]

In *Shay*, 487 Mich at 671, the plaintiff presented extrinsic evidence to support his contention that the release language was ambiguous, including an affidavit of counsel for the Allen Park Officers, who drafted the releases, stating that he had not intended to release the Melvindale Officers. The Melvindale Officers did not dispute this extrinsic evidence. *Id.* at 672. All of the contracting parties agreed that they did not intend for the releases to have any effect on the Melvindale Officers' liability, and "[e]ven the Melvindale Officers *themselves* did not believe that the releases were intended to include them." *Id.* at 674.

The present case is far different from *Shay*. In this case, there was no extrinsic evidence properly before the trial court that would create a latent ambiguity in the release language. The Sykes release contained broad language in which the Alawi parties released, in addition to Sykes,

any other persons, firms, organizations, associations, partnerships, corporations, or other entities who might be claimed to be liable, at fault or otherwise responsible, or who are or might be in privity with it from any and all claims, judgments, debts, liabilities, expenses, attorneys' fees, actions, causes of action, grievances, demands, costs, loss of services, compensation and all damages of whatever type or nature including those sounding [in] contract and tort, whether

legal or equitable, compensatory or punitive, known or unknown, whether raised in the Litigation or not, which they have or ever have had through the date of this [settlement and release].

The only document that the Alawi parties appended to their response to Chapman's motion for summary disposition was a purported affidavit of Alawi, but the document was not signed by Alawi or notarized and thus did not constitute an affidavit. See *Gorman*, 302 Mich App at 120 (noting that a trial court may not consider an unsigned, unsworn affidavit when deciding a motion for summary disposition). Although the Alawi parties filed a signed and notarized copy of the affidavit two days after the hearing in which the trial court decided the motion for summary disposition, that version of the affidavit may not be considered because "appellate review of the trial court's decision is limited to the evidence that had been presented at the time the motion was decided." *Id.*; see also *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003) (noting that this Court "only consider[s] what was properly presented to the trial court before its decision on the motion [for summary disposition]").[12]

Even if Alawi's unsigned and unsworn affidavit were considered, it falls far short of the type of evidence that created a latent ambiguity in *Shay*. Alawi's purported affidavit stated that Chapman was not considered to be a third-party beneficiary of ¶ 4 of the Sykes release, but that provision released Sykes's claims against the Alawi parties; it was ¶ 5 of the Sykes release that contained the broad language quoted above releasing Sykes and "any other persons[,]" etc. Even if Alawi's affidavit is construed as referring to ¶ 5 of the Sykes release, there is no evidence that the other party to the release, Sykes, agrees with Alawi's self-serving claim that Chapman was not an intended third-party beneficiary of the release, a claim that contravenes the plain language of the release that released the broadest possible category of persons. Further, unlike in *Shay*, where the Melvindale Officers admitted that they were not intended to be third-party beneficiaries of the release, Chapman has made no such concession here. In addition, the release in this case does refer to Chapman by name in stating the names of the cases in which Sykes and the Alawi parties were involved in litigating, Sykes is referred to as a tenant in the release, and there is no dispute that Chapman and Sykes were co-tenants such that they fell within the same class of persons who were involved in litigation with the Alawi parties, the landlords of the house that Chapman and Sykes were renting together. In addition, the release at one point refers to "[t]enants" in the plural: ¶ 2 states that "Tenants shall pay to Landlord the sum of $2,905.00, receipt of which is hereby acknowledged." Overall, even if Alawi's purported affidavit were considered, we are not convinced that it establishes the existence of a latent ambiguity, or that

---

[12] In addition, there is no evidence that the signed and notarized version of the affidavit was served on Chapman until much later, when the Alawi parties filed a motion for reconsideration, and Chapman represents on appeal that he was not served with the affidavit until the motion for reconsideration was filed.

the resolution of such a latent ambiguity would lead to the conclusion that the contracting parties did not intend for Chapman to be a third-party beneficiary of the release.[13]

The Alawi parties next argue the trial court erred in requiring them to pay Chapman twice the amount of the entire security deposit. We disagree. The trial court's decision is premised on a judicial admission made by the Alawi parties. Whether the Alawi parties made a judicial admission constitutes a question of law. Questions of law are reviewed de novo. See, generally, *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). Principles governing the interpretation of contracts apply to this Court's review of the language of a lease. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Questions concerning the proper interpretation of a contract or the legal effect of a contractual provision are reviewed de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

> In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. [*In re Smith Trust*, 480 Mich at 24 (citations omitted).]

MCL 554.613(1), a provision of the LTRA, generally requires a landlord to commence an action for money damages or return the security deposit to the tenant within 45 days after termination of the tenant's occupancy. MCL 554.613(2) provides that a landlord who fails to comply with MCL 554.613 is "liable to the tenant for double the amount of the security deposit retained." In their second amended complaint in their action seeking to collect unpaid rent and other damages, the Alawi parties set forth a calculation of their damages and deducted from their damages claim the amount of $9,185, which was alleged to represent the "[s]ecurity [d]eposit on hand (x2)."[14] This comprised a judicial admission that was binding on the Alawi parties. A judicial admission is a formal concession in the pleadings or a stipulation by a party or its attorney that has the effect of withdrawing a fact from issue and dispensing with the need to prove that fact. *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 420; 551 NW2d 698 (1996). In contrast to an evidentiary admission, a judicial admission is conclusive unless the trial court allows it to be withdrawn. *Id*. at 421.[15] The Alawi parties' admission could be interpreted

---

[13] Although it is not necessary to the analysis, we note that the Alawi parties' attorney drafted the Sykes release, and that in *Shay*, 487 Mich at 673, the Supreme Court stated that "[i]t is an elementary rule of construction of contracts that in case of doubt, a contract is to be strictly construed against the party by whose agent it was drafted." Therefore, even if a latent ambiguity existed here, it is far from clear that this would lead to an outcome favorable to the Alawi parties.

[14] As Chapman's appellate brief explains, the Alawi parties' second amended complaint slightly overstated the amount that was twice the security deposit—the security deposit was $4,562.50, and twice that amount is $9,125.

[15] An alternatively-stated claim in a complaint does not constitute an admission that can be used against a party, *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 514-515; 679

as either an admission of fact or an admission that, by operation of MCL 554.613(2), they owed twice the amount of the security deposit. In either event, the admission is binding because a party may admit to both facts and "the application of law to fact[.]" MCR 2.312(A).

In light of the Alawi parties' judicial admission on this point, it is unnecessary to address whether the Alawi parties failed to commence their action within the 45-day period required by MCL 554.613(1) such that a doubling of the security deposit under MCL 554.613(2) was required absent a judicial admission. The trial court did not address that question, instead resolving the issue on the basis of the Alawi parties' concession in their second amended complaint. Moreover, the Alawi parties do not present a sufficient appellate argument on that point, thereby abandoning that issue. *Wilson*, 457 Mich at 243; *McIntosh*, 282 Mich App at 484.

The Alawi parties further argue that Chapman was only entitled to receive the portion of the security deposit that he paid and not the portions paid by any co-tenant. However, the lease provides the following:

> If more than one person signs this lease, then the security deposit shall be returned in one check payable to one tenant. . . . This tenant shall act as agent of all other persons who have signed this lease or acquired legal rights of occupancy under it in dividing the security deposit according to any shares the tenants have agreed upon and in remitting those shares to each person. Landlord shall not be responsible for the proper division of shares in the security deposit, nor for the assessment of individual liability for any charges against the security deposit made by Landlord, which shall be matters solely for the Tenants to agree upon.

The trial court properly determined that the entire security deposit should be returned to Chapman given that the plain language of the lease provides for the security deposit to be returned in one check payable to one tenant; Chapman was the only tenant still involved in this litigation at the time of the court's ruling on this issue. The Alawi parties further argue that three of Chapman's co-tenants assigned their rights to the security-deposit funds to the Alawi parties as part of a settlement agreement. However, the Alawi parties failed to provide that settlement agreement to the trial court before the trial court decided this issue, instead providing the settlement agreement for the first time in their motion for reconsideration.[16] This Court may only consider the documents that were properly presented to the trial court when it decided this issue. See *Pena*, 255 Mich App at 310. But even if the co-tenants' settlement agreement were considered, it was executed in September 2014, months before the Alawi parties filed their second amended complaint in January 2015 that deducted twice the amount of the entire security deposit from their damages claim. The Alawi parties offer no explanation for why they would have deducted twice the amount of the entire security deposit if they were taking the position that three of Chapman's co-tenants had already surrendered their portions of the security deposit to

NW2d 106 (2004), but the Alawi parties' deduction of twice the amount of the security deposit from their damages claim was not an alternatively-stated claim.

[16] The settlement agreement, which was executed in September 2014, does indicate that three of Chapman's co-tenants—Thomas Sullivan, Nikola Rakic, and George Kelly—surrendered their shares of the security deposit to the Alawi parties.

the Alawi parties. Hence, the Alawi parties have failed to establish that the settlement agreement with three of Chapman's co-tenants made it inappropriate to award Chapman twice the amount of the entire security deposit.

Finally, the Alawi parties cursorily assert that the trial court had previously dismissed Chapman's counterclaims, including his claim to twice the amount of the security deposit, such that it was improper to award twice the amount of the security deposit to Chapman. As discussed, however, the trial court expressly reserved the issue of the security deposit when it decided to dismiss Chapman's counterclaims. After further briefing, the trial court held a subsequent hearing at which it rendered its decision on the security-deposit issue. The trial court then entered its order requiring the Alawi parties to pay to Chapman the sum of $9,125, which was twice the amount of the security deposit, and entered a separate order that, among other things, dismissed Chapman's counterclaims subject to the disposition of the security deposit. In short, the Alawi parties' cursory appellate claim fails to recount accurately the procedural history. The trial court did not err in its ruling on this issue.

## III. DOCKET NO. 333259

The Alawi parties[17] argue that the trial court clearly erred in denying the Alawi parties' request for sanctions against Chapman for filing a frivolous action. We disagree.

Initially, we note that Chapman cursorily asserts in his appellee brief that this Court lacks "subject matter jurisdiction over 1129 S. State Street, LLC in this appeal" because 1129 S. State Street, LLC, did not file a claim of appeal or an application for leave to appeal within the required time limits. However, three days before Chapman filed his appellee brief, this Court entered an order granting a motion by the Alawi parties' counsel, Mark A. Hopper, to add 1129 S. State, LLC, as an appellant. See *Chapman v Alawi*, unpublished order of the Court of Appeals, entered April 4, 2017 (Docket No. 333259). Only Alawi claimed an appeal from the order denying the Alawi parties' motion for sanctions against Chapman, but Hopper then filed a brief on appeal that listed Michigan Rental, Alawi, and 1129 S. State, LLC, as appellants. After our Clerk's office informed Hopper of the discrepancy in the designation of appellants, Hopper moved to amend the claim of appeal to add 1129 S. State, LLC, as an appellant, which we granted. *Id*. MCR 7.204(A) states that the "time limit for an appeal of right is jurisdictional." An appeal of right must be taken within 21 days after entry of the order being appealed. MCR 7.204(A)(1). It is true that 1129 S. State did not take an appeal within 21 days after entry of the order. However, an appeal of right was taken from the May 25, 2016, order denying sanctions within the 21-day time frame, even if not by 1129 S. State. Thus, this Court has jurisdiction to decide the issues related to the May 25, 2016, order. And MCR 7.216(A)(2) grants this Court authority to "allow substitution, addition, or deletion of parties or allow parties to be rearranged as appellants or appellees, on reasonable notice[.]" Additionally, MCR 7.216(A)(7) grants this Court authority to enter any order as the case may require.

---

[17] Although Michigan Rental is not designated as an appellant in the appeal in which this issue is raised, Alawi and 1129 S. State, LLC, are designated as appellants, and we will refer to Alawi and 1129 S. State, LLC, as "the Alawi parties" in this issue for the sake of simplicity.

The court rules thus allowed the addition of 1129 S. State as a party appellant to the case on reasonable notice. Reasonable notice was satisfied here. Clearly, Hopper believed that 1129 S. State was an appellant in the case. He filed his brief, listing that party as an appellant. As soon as he received this Court's letter advising him that Alawi was the only appellant in the case, he moved to add 1129 S. State. Notably, in a prior motion answer filed by Chapman on September 7, 2016, he listed 1129 S. State in the case caption as an appellant in this case. Thus, Chapman cannot claim prejudice from the addition of 1129 S. State as a party. He, too, believed 1129 S. State was an appellant. Moreover, the May 25, 2016, order from which Alawi claimed the appeal denied 1129 S. State the same relief that Alawi had requested. All of the Alawi parties were denied attorney fees and costs as a sanction against Chapman. This Court's opinion related to the May 25, 2016, order therefore necessarily adjudicates the rights of 1129 S. State. Additionally, 1129 S. State is a party to the other five consolidated cases that are before this Court. This fact supports that there has been no prejudice to Chapman from amending the claim of appeal to add 1129 S. State as an appellant. Chapman's cursory assertion in his appellee brief that this Court lacks subject-matter jurisdiction over 1129 S. State is devoid of merit.

We now turn to the substantive issue. The trial court correctly concluded that the Alawi parties' motion for sanctions is barred by the Sykes release. As discussed earlier, the Sykes release contains broad language by which the Alawi parties released, in addition to Sykes,

> *any other persons*, firms, organizations, associations, partnerships, corporations, or other entities who might be claimed to be liable, at fault or otherwise responsible, or who are or might be in privity with it from any and all claims, judgments, debts, liabilities, *expenses, attorneys' fees*, actions, cause of action, grievances, demands, *costs*, loss of services, compensation and all damages of whatever type or nature including those sounding [in] contract and tort, whether legal or equitable, compensatory or punitive, known or unknown, whether raised in the Litigation or not, which they have or ever have had through the date of this [settlement and release]. [Emphasis added.]

We adhere to our earlier analysis concluding that the Alawi parties have failed to establish a latent ambiguity in the Sykes release that should be resolved in favor of the Alawi parties' position that the release is inapplicable to claims against Chapman. The Alawi parties are barred under the Sykes release from obtaining the requested costs and attorney fees against Chapman.

Nor did the trial court clearly err in determining that, even if the Sykes release was inapplicable, the Alawi parties would not be entitled to sanctions. Although the trial court ultimately dismissed all of Chapman's claims, this does not prove that the claims were frivolous. See *Kitchen*, 465 Mich at 663, *Jerico Constr*, 257 Mich App at 36, and *Louya*, 190 Mich App at 163. The Alawi parties fail to address each specific claim raised by Chapman and to explain precisely how it was frivolous. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson*, 457 Mich at 243 (citation and quotation marks omitted). Failure to adequately brief an issue constitutes abandonment. *McIntosh*, 282 Mich App at 484.

To the extent that the Alawi parties have briefed the issue, their arguments are unavailing. The Alawi parties acknowledged legal deficiencies in their lease with Chapman and that they have now corrected those deficiencies in their leases with other tenants. Although Chapman was ultimately unable to recover due to the lack of damages and inability to establish entitlement to a declaratory judgment, this does not mean his claims were frivolous. The fact that Chapman's counsel ultimately withdrew his class action claims does not establish that his original request for class-action status was frivolous. The Alawi parties' acknowledgement of deficiencies in their leases that were later corrected arguably suggests that other tenants of the Alawi parties may also have had potential claims. That Chapman's counsel ultimately chose to focus on Chapman's claims when his mold and lead-paint claims were discovered in lieu of pursuing the class action does not necessitate a finding of frivolousness. Indeed, the court rule pertaining to class actions expressly contemplates that a class action will sometimes not be pursued despite having been alleged in the complaint. See MCR 3.501(B)(1) and (2). The Alawi parties' argument regarding the claims asserted by the estate of a co-tenant who committed suicide are not pertinent in assessing whether Chapman's own claims were frivolous. Chapman's mold and lead-paint claims were ultimately determined to lack sufficient support, but this was after litigation that included assessments by the trial court regarding the evidence presented and the admissibility of proposed expert testimony. It has not been established that the claims were frivolous based on the circumstances at the time the claims were asserted. See *Jerico Constr*, 257 Mich App at 36.

## IV. DOCKET NOS. 334164 AND 334165[18]

Chapman argues that the trial court erred in denying his motion for case-evaluation sanctions. We disagree. "A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith*, 481 Mich at 526 (opinion by TAYLOR, C.J.).

MCR 2.403(O)(1) provides for case-evaluation sanctions, in relevant part, as follows: "If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." A "verdict" includes "a judgment entered as a result of a ruling on a motion after rejection of the case evaluation." MCR 2.403(O)(2)(c). A verdict is more favorable to the defendant if it is more than 10 percent below the case evaluation or, if the evaluation was zero, the verdict reflects a finding that the defendant is not liable to the plaintiff. MCR 2.403(O)(3). "[A]ctual costs" consist of costs taxable in a civil action and a reasonable attorney fee for services necessitated by the rejection of the evaluation. MCR 2.403(O)(6). "If the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs." MCR 2.403(O)(11).

Chapman argues that he is entitled to case-evaluation sanctions in both of the lower court files because the "net" case-evaluation award of $4,000 in his favor was more favorable to the Alawi parties than the "verdict" consisting of the order in the Alawi parties' action requiring the Alawi parties to pay $9,125 to Chapman. This argument is unavailing. Although Chapman's

---

[18] Chapman has filed a single appellate brief encompassing these two appeals.

action and the Alawi parties' action were consolidated for hearing purposes in the trial court, the two cases retained their separate identities. Indeed, the circuit-court clerk provided to the parties' attorneys a notice regarding procedure for the consolidated cases that stated: "Please take notice that the above cases have been consolidated for hearing in the Washtenaw County Circuit Court by order of the court. Consolidated cases do not become as one file. Separate court files and dockets are still maintained." In *Chen v Wayne State Univ*, 284 Mich App 172, 196-199; 771 NW2d 820 (2009), this Court held that two consolidated cases retained their separate identities and were not merged. Although the two consolidated cases here were submitted to the same case-evaluation panel, the panel issued a separate evaluation for each case. Chapman's argument that he is entitled to sanctions in both cases is erroneously premised on treating the two cases as one case by merging the two case-evaluation awards such that a "net" case-evaluation award of $4,000 in his favor is created. Each case must be reviewed separately to determine Chapman's entitlement to case-evaluation sanctions because the two cases retained their separate identities and were evaluated separately.

In Chapman's action, the case-evaluation panel recommended an award of $5,000 in favor of Chapman and against the Alawi parties. Chapman accepted the award, and the Alawi parties rejected the award. All of Chapman's claims in his own case were later summarily dismissed. Therefore, the verdict was more favorable to the Alawi parties than the case-evaluation award because the verdict amounted to a finding that the Alawi parties were not liable to Chapman. MCR 2.403(O)(3). Chapman is therefore not entitled to case-evaluation sanctions against the Alawi parties in Chapman's action. MCR 2.403(O)(1).

In the Alawi parties' action, the case-evaluation panel recommended an award of $1,000 in favor of the Alawi parties and against Chapman. Chapman accepted the award, and the Alawi parties rejected the award. The verdict in the Alawi parties' action consisted of an order requiring the Alawi parties to pay Chapman $9,125. Therefore, the verdict was not more favorable to the Alawi parties than the case-evaluation award. Hence, Chapman would generally be entitled to case-evaluation sanctions against the Alawi parties in the Alawi parties' action. However, the trial court stated that it was declining to award case-evaluation sanctions to Chapman because the Sykes release that led to the dismissal of the Alawi parties' claims did not yet exist at the time of the case evaluation. As noted in *Allard v State Farm Ins Co*, 271 Mich App 394, 398; 722 NW2d 268 (2006), an exception to awarding case-evaluation sanctions may be invoked when, as in this case, the verdict consists of a judgment entered as a result of a ruling on a motion: in this situation, the trial court may, in the interest of justice, refuse to award costs. See MCR 2.403(O)(11). While the trial court did not *explicitly* cite MCR 2.403(O)(11) in making its ruling, from context it is evident that the trial court was invoking the "interest of justice" exception to decline to sanction the Alawi parties, given the timing of the Sykes release. The court stated that "it would be unfair to penalize [the Alawi parties] . . . for not anticipating that the release and satisfaction would . . . occur [and] be dispositive of the case." Under the circumstances, we find no basis for reversal.

Chapman next argues that the trial court erred in only partially granting Chapman's motion for costs under MCR 2.625. We disagree. The trial court properly limited its award of taxable costs to Chapman to those costs incurred in the Alawi parties' action because Chapman did not prevail in his own action.

A trial court's ruling on a motion to tax costs under MCR 2.625 is reviewed for an abuse of discretion. *Guerrero*, 280 Mich App at 670. "The determination whether a party is a 'prevailing party' for the purpose of awarding costs under MCR 2.625 is a question of law, which this Court reviews de novo." *Fansler v Richardson*, 266 Mich App 123, 126; 698 NW2d 916 (2005).

MCR 2.625(A)(1) provides: "Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." MCR 2.625(B)(1) states:

> If separate judgments are entered under MCR 2.116 or MCR 2.505(A) [pertaining to consolidated actions] and the plaintiff prevails in one judgment in an amount and under circumstances which would entitle the plaintiff to costs, he or she is deemed the prevailing party. Costs common to more than one judgment may be allowed only once.

MCR 2.625(B)(2) provides:

> In an action involving several issues or counts that state different causes of action or different defenses, the party prevailing on each issue or count may be allowed costs for that issue or count. If there is a single cause of action alleged, the party who prevails on the entire record is deemed the prevailing party.

MCL 600.2421b(3)(a) defines a "prevailing party" as follows: "In an action involving several remedies, or issues or counts which state different causes of actions or defenses, the party prevailing as to each remedy, issue, or count." MCL 600.2421b(3)(b) further defines a "prevailing party" as follows: "In an action involving only 1 issue or count stating only 1 cause of action or defense, the party prevailing on the entire record." Where there are multiple claims, if recovery on one claim would not bar recovery on other claims, different causes of action are involved under MCR 2.625(B)(2), such that costs are allowed to the prevailing party in each cause. *Klinke v Mitsubishi Motors Corp*, 219 Mich App 500, 520; 556 NW2d 528 (1996), aff'd 458 Mich 582 (1998). "In order to be considered a prevailing party, that party must show, at the very least, that its position was improved by the litigation." *Fansler*, 266 Mich App at 128 (quotation marks, brackets, and citation omitted).

Chapman argues that he is entitled to taxable costs incurred in his own action because he is the prevailing party in both cases. He further asserts entitlement to recover his costs for the litigation of his own action because he asserted counterclaims in the Alawi parties' action that were essentially identical to Chapman's claims in his own action. We disagree. As discussed earlier, Chapman prevailed in the Alawi parties' action; his position improved in that litigation because the trial court ordered the Alawi parties to pay Chapman $9,125 in that case. But in Chapman's action, he was not the prevailing party because his position was not improved by the litigation; indeed, the trial court dismissed all of Chapman's claims. Although Chapman asserted the claims from his action as counterclaims in the Alawi parties' action, the Alawi parties' action included additional claims and issues pertaining to unpaid rent, property damages, and recovery of the security deposit. The trial court determined that most of the costs submitted by Chapman were related to proving his claims for personal injury and other matters in his own action. The

trial court awarded Chapman $100 as filing fees for five motions in the Alawi parties' action. The litigation activity in the Alawi parties' action was minimal in comparison to the extensive litigation that occurred in Chapman's action. The trial court did not abuse its discretion in limiting Chapman's taxable costs to those incurred in the Alawi parties' action because that was the only case in which Chapman was the prevailing party.

## V. DOCKET NO. 334948

Chapman argues that the trial court erred in awarding taxable costs and expert-witness fees to the Alawi parties under MCR 2.625. We agree.

Chapman argues that the Sykes release bars the Alawi parties from recovering taxable costs and expert-witness fees against Chapman. We agree. In accordance with our earlier analysis, we conclude that the Sykes release bars the Alawi parties from recovering costs and expert-witness fees against Chapman because he is a third-party beneficiary of the broad language in the release. In the Sykes release, the Alawi parties released "any other persons . . . who might be claimed to be liable, at fault or otherwise responsible" from "any and all claims, . . . expenses, attorneys' fees, [and] costs . . . ."[19] The Alawi parties suggest that the Sykes release is inapplicable because the *Daubert* hearing (with respect to which expert-witness fees were awarded) was held after the Sykes release was signed; the Alawi parties note that the release states that it applies to claims, expenses, attorney fees, and costs that the Alawi parties "have or ever have had through the date of this [settlement and release]." The Alawi parties fail to address the fact that some of the expert-witness fees and costs claimed were incurred before the date of the Sykes release even though the *Daubert* hearing was held after the signing of the Sykes release. More importantly, the fact remains that the expert-witness fees and costs incurred after the execution of the Sykes release were incurred *as part of the ongoing litigation in which the Alawi parties reached a settlement agreement with Sykes whereby they agreed to release Sykes and, as a third-party beneficiary, Chapman.* MCR 2.625(H) provides: "Unless otherwise specified a settlement is deemed to include the payment of any costs that might have been taxable." Although the Alawi parties did not settle with Chapman, they did settle with Sykes, and as part of that settlement they agreed to release "any other persons" from all claims, expenses, attorney fees, and costs. Therefore, the Sykes release barred the Alawi parties from recovering taxable costs and expert-witness fees against Chapman. It is therefore unnecessary to address Chapman's other arguments for reversing the award of taxable costs and expert-witness fees against him.

Finally, the Alawi parties request sanctions under MCR 7.216(C) against Chapman for allegedly pursuing vexatious appeals in this matter. However, a request for sanctions for filing a vexatious appeal must be contained in a motion rather than in an appellate brief. See MCR 7.211(C)(8); see also *Barrow v Detroit Election Comm*, 305 Mich App 649, 684; 854 NW2d 489 (2014) (holding that a sanctions request in an appellate brief did not constitute a motion under

---

[19] We note that the Sykes release referenced both of the consolidated lower-court actions in indicating that Sykes and the Alawi parties had reached a settlement agreement.

-46-

the court rule and that such a motion could be filed within 21 days after the date of this Court's opinion).

We affirm in Docket Nos. 331750, 332711, 333259, 334164 and 334165. In Docket No. 334948, we reverse and remand for entry of an order denying the Alawi parties' request for taxable costs and expert-witness fees. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly